[15127. Department Two.—June 9, 1893.]

## THE WEST COAST LUMBER COMPANY, RESPONDENT, *v.* THE STATE INVESTMENT AND INSURANCE COMPANY, APPELLANT.

FIRE INSURANCE—ESTOPPEL OF INSURERS—WAIVER OF DEFENSE.—Insurers may by their acts and conduct be estopped from availing themselves of a defense which they otherwise interpose to an action upon their policies, or may waive their right to avail themselves of such a defense.

ID.—INSURANCE ON UNOCCUPIED BUILDING—PROVISO AS TO INVALIDITY—PRESUMPTION OF WAIVER.—If a building is insured against loss by fire under a policy containing a proviso that it shall be or become void in case the building is or shall become vacant or unoccupied, when it was well known to the insurer at the date of the policy and subsequently that it was and remained unoccupied, the insurer will be presumed to have waived the clause as to occupancy.

ID.—INSURANCE OF LUMBER COMPANY—POLICY IN NAME OF LESSEE—SURRENDER OF LEASEHOLD INTEREST—WAIVER OF FORFEITURE—POWER OF LOCAL AGENT. — Where a policy of fire insurance was issued in the name of a lessee, at the instance of a lumber company, which furnished material for the erection of a frame building by the lessee, and the lumber company paid the premium and received the policy which provided that the loss, if any, should be payable to the lumber company, as its interest may appear, and also provided that if any change takes place in title or possession without the consent of the insurance company indorsed on the policy, the policy shall be void, but contained no provision in regard to the mode of waiver of a forfeiture, or stating by whom a waiver might be made, it must be assumed that the local agent who issued the policy had power to bind the insurance company by such waiver by his acts or declarations, and its right to terminate the policy on account of the surrender of the leasehold interest by the lessor, without indorsement of consent on the policy, is waived by the declaration of such local agent to the agent of the lumber company that no change in the policy of insurance was necessary on account of such surrender.

ID.—PROOFS OF LOSS—FALSE SWEARING—FRAUD.—The false swearing and fraud in the proofs of loss that will forfeit a policy under a clause to that effect is wilful fraud or false swearing, and not the result of inadvertence or mistake, and should be knowingly and wilfully false, and intended to injure the company, or if not so intended, must relate to some material matter concerning which the company has a right to know the truth, and the effect of which could have a bearing upon its liability.

ID.—PRESUMPTION OF MISTAKE OR MISAPPREHENSION.—If such a state of facts is presented as leaves a reasonable presumption of mistake or misapprehension on the part of the person swearing to the proofs of loss, such presumption should be indulged in preference to that of wilful false swearing.

ID.—INSURED BUILDING SURRENDERED TO LESSOR AS SECURITY FOR RENT—AFFIDAVIT OF OWNERSHIP BY LESSEE.—Where it appears that the lessee in whose name the insurance policy was taken had surrendered the lease to the lessor as security for the payment of back rent, he still had an equitable interest in the property, and subject to payment of the back rent, was entitled to be restored to his legal *status* under the lease, and it will not be presumed that he intended wilfully to swear falsely in stating in the proofs of loss that he alone owned the insured building, which he had erected as lessee, because of the fact that the legal title had passed from him to the lessor.

ID.—WAIVER OF FALSE PROOFS OF LOSS—BILL OF EXCHANGE FOR AMOUNT OF INSURANCE.—Where it appears that the insurance company knew where the title of the leasehold interest was vested, and knew the interest of the lumber company in the building, and insisted that the lessee, in whose name the policy was taken, should make the proofs of loss, and made no objection to the proofs when received, and drew and delivered to the lumber company its bill of exchange for the amount of the insurance which was not paid upon presentation for the only reason assigned that it was not accompanied by a receipt from the lessee, who died before such receipt could be obtained, the delivery of such bill of exchange, with full knowledge of all the facts, constituted a waiver of the right of the insurance company to set up a forfeiture by reason of false swearing in the proofs of loss.

ID.—ACTION UPON POLICY—PARTIES—RIGHTS OF BENEFICIARY—RELEASE—RECEIPT.—A beneficiary to whom the whole amount of an insurance policy is payable by its terms in case of loss, may sue thereon as the real party in interest, and may give a valid discharge of the cause of action, without the necessity of obtaining a receipt from the owner of the building, in whose name the policy was taken for the benefit of the party obtaining the insurance.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion.

*Fisher Ames,* for Appellant.

The falsehood contained in the proof of loss, respecting the ownership of the insured property, operated as a forfeiture of all claim under the policy. (2 May on Insurance, 3d ed., sec. 477; *Lion Fire Ins. Co.* v. *Starr,* 71 Tex. 733; *Claflin* v. *Insurance Co.,* 110 U. S. 81–97; *Clark* v. *Phœnix Ins. Co.,* 36 Cal. 176.)

*Haven & Haven,* for Respondent.

Either the plaintiff or Newkirk were proper parties plaintiff. (Barber's Principles of Insurance, pp. 31, 32.) Insurance policies will be construed in favor of the assured and against the insurer. (*Darrow* v. *Family Fund Soc.,* 116 N. Y. 537; *Mutual Assur. Soc.* v. *Scottish Union etc. Ins. Co.,* 84 Va. 116; 10 Am. St. Rep. 819; *Insurance Co.* v. *Cropper,* 32 Pa. St. 351; *United States Mut. A. Ass'n* v. *Newman,* 84 Va. 58; *Insurance Co.* v. *Cherry,* 84 Va. 75; *Paul* v. *Insurance Co.,* 112 N. Y. 472; *Insurance Co.* v. *Dunham,* 117 Pa. St. 460; *Insurance Co.* v. *Hoffman,* 125 Pa. St. 626.) In order that a false answer should constitute a defense to a claim under an insurance policy, it must be a false answer to a matter of fact material to the inquiry, and must be knowingly and wilfully made with intent to deceive. (*Claflin* v. *Insurance Co.,* 110 U. S. 81.) The facts in this case show a waiver of the conditions of the policy, and of any errors in proofs of loss. (*Wheaton* v. *Insurance Co.,* 76 Cal. 426; Wood on Fire Insurance, sec. 325; *Silverberg* v. *Insurance Co.,* 67 Cal. 36; *Pennsylvania Ins. Co.* v. *Kittle,* 39 Mich. 54; *Murray* v. *Home Benefit Life Ass'n,* 90 Cal. 406; *Viele* v. *Germania Ins. Co.,* 26 Iowa, 9; 96 Am. Dec. 83; *Queen Ins. Co.* v. *Young,* 86 Ala. 424; 11 Am. St. Rep. 51; *Titus* v. *Glen's Falls Ins. Co.,* 81 N. Y. 419. See also *Kruger* v. *Insurance Co.,* 72 Cal. 91; *Carroll* v. *Insurance Co.,* 72 Cal. 297; *Menk* v. *Insurance Co.,* 76 Cal. 53; *Farnum* v.

*Insurance Co.,* 83 Cal. 246; *McFarland* v. *Insurance Co.,* 134
Pa. St. 590; *Niagara Ins. Co.* v. *Miller,* 120 Pa. St. 504;
*Snowden* v. *Insurance Co.,* 122 Pa. St. 502; *German Ins. Co.*
v. *Gray,* 43 Kan. 497; *Warner* v. *Insurance Co.,* 14 Wis. 318;
*Keeler* v. *Insurance Co.,* 16 Wis. 523; *Miner* v. *Insurance Co.,*
27 Wis. 693; *Webster* v. *Insurance Co.,* 36 Wis. 67; *Insurance
Co.* v. *Insurance Co.,* 40 Wis. 446; *Keenan* v. *Insurance Co.,*
12 Iowa, 126; *David* v. *Insurance Co.,* 13 Iowa, 69; *Coursin* v.
*Insurance Co.,* 46 Pa. St. 323; *Atlantic Ins. Co.* v. *Goodall,* 35
N. H. 328; *Franklin* v. *Insurance Co.,* 42 Mo. 456; *North
Berwick Co.* v. *New England etc. Ins. Co.,* 52 Me. 336; *Insur-
ance Co.* v. *Schettler,* 38 Ill. 166; *Insurance Co.* v. *Slockbower,*
26 Pa. St. 199; *Beal* v. *Insurance Co.,* 16 Wis. 241; *Insurance
Co.* v. *Hall,* 12 Mich. 202.)

SEARLS, C. — Action upon a policy of insurance. Plaintiff
had judgment, from which and from an order denying a motion
for a new trial the defendant appeals.

On the eighteenth day of June, 1888, the State Investment
and Insurance Company, a corporation, the defendant herein,
issued its policy of insurance against loss or damage by fire, to
one E. B. Newkirk, to the amount of $1,200, upon a three-story
frame store-building, situate in San Diego, California; "loss,
if any, payable to West Coast Lumber Company, as their inter-
est may appear." The building insured was wholly destroyed
by fire February 5, 1889.

The complaint contains two counts:—

1. A count in the usual form for non-payment by defendant
of $1,200, on account of the loss by fire of the insured property.

2. For the non-payment of a bill of exchange drawn by
direction of defendant upon itself in the adjustment by defend-
ant of the loss, in the sum of $1,200.

The answer sets out a number of defenses to the action,
among which may be enumerated:—

1. The plaintiff had no interest in the property except as a
holder of a mechanic's lien thereon, which had been paid, satis-
fied and discharged.

2. The fire occurred by reason of the neglect of the plaintiff
and of E. B. Newkirk to use means practicable and necessary
to preserve the insured property from damages.

3. That the interest of Newkirk in the property was a lease-hold interest, and that on or about July 12, 1888, Newkirk and the plaintiff, without the knowledge or consent of defendant, and contrary to the provisions of the policy, conveyed and delivered the property to one E. V. Roberts, whereby the policy became void.

4. That after July 12, 1888, neither Newkirk nor plaintiff occupied or controlled the building, and that defendant had no knowledge that their insurable interest in the property, or occupancy, or control thereof, had ceased until on or about June 13, 1889, and that at the time of giving the supposed draft or bill of exchange defendant supposed they had an insurable interest therein.

5. That neither plaintiff nor Newkirk gave notice or proof of loss as required by the policy.

At the date of the policy of insurance E. B. Newkirk was the lessee of the insured property, under one E. V. Roberts, from whom he held a written lease. The plaintiff herein had furnished lumber to Newkirk for the construction of the building on the property; had on the twentieth day of March, 1888, filed its mechanic's lien upon the property as security for the sum due and owing for such lumber, amounting to something over $2,200; and had on the eleventh day of June, 1888, brought suit to recover and to foreclose the mechanic's lien against the lessee and owner of the premises. The application for insurance was made by plaintiff, the premium paid by it, and the policy was delivered to it. Subsequent to the issue of the policy, and on the twenty-third day of October, 1888, plaintiff obtained judgment on its claim for $2,332.58, and it was decreed that plaintiff had a lien therefor on the house and lot of land in question. After the fire the lot of land was sold by the sheriff under the decree of foreclosure and purchased by the plaintiff. Its value was $1,000. On or about July 12, 1888, the lessee, E. B. Newkirk, surrendered his leasehold interest in the insured building and lot of land upon which it was situated to his landlord, E. V. Roberts.

There was evidence tending to show and the court found that thereafter and prior to the loss defendant's agent was informed by plaintiff that the leasehold interest had been surrendered by

Newkirk, and was assured by the agent of defendant that no change in the policy of insurance was necessary by reason thereof. The court finds, also, that within sixty days after the fire plaintiff, under the direction and instructions of the defendant, procured proof of the loss to be made and signed by Newkirk, as required by the policy of insurance, and delivered the same to defendant. These proofs were retained by defendant. An examination of the circumstances of the destruction of the property was made by it, and of plaintiff's interest therein and right to receive the amount of the insurance under the policy, and thereafter, by direction of defendant, its agent in San Diego made and accepted and delivered to plaintiff its bill of exchange in writing for $1,200.

The court finds that there was no misapprehension on the part of defendant, respecting the insurable interest of the plaintiff or of Newkirk, at the time the bill of exchange was executed.

The foregoing statement is not intended as a synopsis of all the issues, or of all the facts found by the court, but is deemed sufficient to an understanding of the principal objections made by appellant to the findings of the court and the judgment based thereon. The contentions of appellant may be grouped under two heads: 1. Those relating to the forfeiture of the policy by the surrender of the leasehold interest of Newkirk to his landlord, and to his subsequent lack of an insurable interest in the property; and 2. Those founded upon the alleged false and fraudulent statements of Newkirk in the proof of loss furnished the defendant. The insured building stood upon leased ground, which fact was stated in the policy.

Among the causes of forfeiture mentioned in the policy are the following: If the above-mentioned premises "become vacant and unoccupied . . . . or if the property be sold or transferred, or any change takes place in title or possession, whether by legal process or judicial decree, or voluntary transfer or conveyance . . . . without the consent of the company indorsed hereon . . . . then and in every such case this policy shall be void."

The finding of the court is, as before stated, that on or about July 12, 1888, Newkirk surrendered his leasehold to his landlord, E. V. Roberts, and that thereafter and prior to the fire,

defendant's agent was informed of such fact by the agent of plaintiff, and he thereupon assured the agent of plaintiff that no change in the policy of insurance was necessary. This finding is supported by evidence.

The witness Hickman, who had charge of plaintiff's business, testified that he informed Mr. Pierce, the agent of defendant, two or three days after the change, that the property had passed from Newkirk to the owner of the real estate, and says: "I told him the policy should be changed to show the difference in ownership, and he claimed it was just as well to let it stand as it was, as our (plaintiff's) interest in the building was not changed, and Newkirk might possibly reclaim his property"; and again, "he (Pierce) assured me that the policy was just as good then as it ever was, and covered our interest in the building just the same."

The question involved under this head is not as to the binding effect of the clauses in the policy as to change of ownership or possession, or as to the original right of defendant to insist upon their observance, and in default thereof to uphold a forfeiture of the policy. The proposition is rather that conceding all this, could and did the defendant waive their observance? Insurers may and often do by their acts and conduct place themselves in such a position that they cannot avail themselves of a defense which they might otherwise interpose to an action upon their policies. When thus placed they are said to be estopped from availing themselves, or to have waived their right to avail themselves of such a defense.

If, as was the case here, a building is insured against loss by fire under a policy containing a proviso that it shall be or become void in case the building is or shall become vacant or unoccupied, when, as was well known to the insurer at the date of the policy and subsequently, it was and remained unoccupied, the insurer will be presumed to have waived the clause as to occupancy. May on Insurance states it in this wise: "To deliver a policy with full knowledge of facts upon which its validity may be disputed, and then to insist upon these facts as ground of avoidance, is to attempt a fraud. This the courts will neither aid nor presume; and when the alternative is to find this or to find that, in accordance with honesty, there was.

an intent to waive the known ground of avoidance, they will choose the latter." (May on Insurance, sec. 497; *Commercial Ins. Co.* v. *Ives*, 56 Ill. 402.)

In many policies of insurance a proviso is inserted inhibiting any waiver of the conditions or requirements of the contract of insurance, except in some specified manner by certain designated person or officers, or excepting such waiver shall be in writing and indorsed on the policy. Questions under provisions of this character arose in *Shuggart* v. *Lycoming Ins. Co.*, 55 Cal. 408; *Gladding* v. *California F. M. I. Ass'n*, 66 Cal. 6; *Enos* v. *Sun Ins. Co.*, 67 Cal. 621. I find no such provision in the policy here. It does provide that certain things shall avoid it unless the consent of the company is indorsed thereon, or " without the written assent of the company indorsed thereon," or " without the consent of the company written thereon," etc.; but there is no clause expressly requiring a waiver of any of the rights of the company to be in writing, or to be assented to by any particular officer or in any specified manner. Under such circumstances it must be a sumed, as was said in *Silverberg* v. *Phœnix Ins. Co.*, 67 Cal. 41, quoting from *Insurance Co.* v. *Wilkinson*, 13 Wall. 222: " The powers of the agent are *prima facie* co-extensive with the business intrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals. An insurance company establishing a local agency must be held responsible to the parties with whom they transact business for the acts and declarations of the agent within the scope of his employment, as if they proceeded from the principal."

The agents of the defendant at San Diego having the authority to so act must be presumed by their conduct and declarations exercised and made with full knowledge of all the facts, to have waived on behalf of defendant its right to have the policy terminated by the surrender of the leasehold interest of Newkirk to his lessor. To hold otherwise would be to uphold practices which would lull the insured into fancied security, to prevent their seeking other and further insurance, until when too late they find themselves doomed to loss by confiding in the declarations and following the advice of those who were bound by every consideration of justice and honesty to speak the truth, or at least to stand mute.

Defendant had a right to cancel its policy or to treat it as forfeited by reason of the change of title and possession; it failed to do so when it should, if at all, and cannot now be permitted to profit at the expense of plaintiff, who would be a sufferer by the delay.

We proceed to consider the alleged false and fraudulent statement of Newkirk in the proof of loss furnished defendant, and its effect, if any, on the rights of the latter.

The policy provided that "in case of loss the assured shall give immediate notice thereof, and shall render to the company a particular account of said loss under oath, stating the time, origin, and circumstances of the fire, occupancy of the building insured, . . . . ownership of the property," etc., also the following clause: "False swearing, fraud, or attempt at fraud, on the part of the assured, shall cause a forfeiture of all claim under this policy." The false swearing and fraud that will forfeit a policy under a clause of this character is wilful fraud or false swearing, and not the result of inadvertence or mistake. (*Lion Fire Ins. Co.* v. *Starr*, 71 Tex. 733; May on Insurance, sec. 447.) It should be knowingly and wilfully false, and intended to injure the company (*Erman* v. *Sun Mut. Ins. Co.*, 35 La. An. 1095); or if not so intended, must relate to some matter material to the inquiry, concerning which the company has a right to know the truth, and the effect of which would have a bearing upon its liability. (*Claflin* v. *Commonw. Ins. Co.*, 110 U. S. 81.)

1. Was Newkirk guilty of false swearing? The proofs of loss subscribed and sworn to by him are not set out in full in the record. So far as made to appear the document is as follows:—

"The property so insured, on which this claim for loss is made, was owned at the time of the fire as follows:—

"By assured, $5,000. Held in trust or commission for —— ——, and no other person or persons have any title to or interest therein. . . . .

"Witness my hand at San Diego, this fifteenth day of April, A. D. 1889.

[Signed]                                    "E. B. Newkirk.
          "Sworn, etc., before
                              "A. C. Morgan,
                                   "Notary Public."

The finding of the court is that Newkirk surrendered his lease in and to the property on or about July 12, 1888, and thenceforth we must presume he had no legal interest therein. In determining, however, whether or not he was guilty of false swearing in making the proofs of loss, we may look to all the evidence in the case, and if such a state of facts is presented thereby as leaves a reasonable presumption of mistake or misapprehension on his part, such presumption should be indulged in preference to that of wilful false swearing, founded upon the single fact that the legal title had passed from him. E. C. Hickman, who had charge of plaintiff's business in San Diego at the time, testified that as soon as he heard of the transfer of the property by Newkirk, "I went to him about it, and he said it was only security for the back rent, and that as soon as he was able to pay the rent the building would be returned to him; and in the mean time, if Mrs. Roberts (the owner) was able to sell the buildings, Mr. Newkirk was to receive all the money received from the buildings that was in surplus of the rent in arrears." If this was true, Newkirk still had an equitable interest in the property, and, subject to the payment of back rent, was entitled to be restored to his legal *status* under the lease. An equitable interest in real property is an insurable interest. This much is deemed due to the memory of Newkirk, who was confined by sickness at the date of taking the proofs, and died three days later.

2. Conceding, however, all that the appellant claims in reference to the falsity of the proofs of loss, and it is not perceived that its case is improved. It is shown to have known where the title was vested. Knowing all this, and the interest of plaintiff in the property, and the amount and nature of such interest, it still insisted that Newkirk should make the proofs of loss, and its agent had then filled out in his office by his book-keeper, and under his instructions, and then delivered them to plaintiff's agent for execution by Newkirk. It received such proofs on or about April 15, 1889, and, so far as appears, made no objection thereto for a long time thereafter. Its adjuster had, as early as February, 1889, furnished the officers of defendant at San Francisco with evidence of plaintiff's claim, and with information as to the state of the title.

On the 3d of June thereafter, defendant instructed its agents at San Diego to draw on it for Newkirk's loss, and to send policy and proper receipts. Thereupon defendant, by its agents, drew and delivered to the plaintiff its bill of exchange as follows: —

"San Diego, Calif., June 3, 1889.

"At sight, pay to order of West Coast Lumber Co., twelve hundred, no 100ths, dollars, value received, and charge the same to account of Pierce & Daly.

"To Charles H. Cushing, Esq., Sec'y State Investment Insurance Co., San Francisco, Calif."

This bill of exchange was presented for payment soon after June 3, 1889, and was not paid to plaintiff because unaccompanied by a receipt from Newkirk; no other objection being made to such payment. A receipt from Newkirk was then sent for, but he had died in the mean time, as before stated. Thereafter, and about June 14, 1889, defendant refused to pay the draft.

The court finds that there was no misapprehension of the facts respecting the insurable interest of plaintiff or of Newkirk on the part of defendant at the time the bill of exchange was executed. There was evidence to support the finding, and I am of opinion defendant had, with a full knowledge of all the facts, waived its right to set up the forfeitures relied upon as a defense to the action.

The case made here is in many respects similar, but in some particulars a stronger one in favor of plaintiff than *Silverburg* v. *Insurance Co.*, 67 Cal. 36. In that case the proofs had been taken by the defendant and pronounced satisfactory and a promise to pay; while here a bill of exchange, which presupposes a final adjustment of the loss and the furnishing of all needed proofs, had been given. Each in its way is a waiver of all causes of forfeiture known, or which ought to have been known, to defendant at the time. (*Murray* v. *Home Benefit Life Ass'n,* 90 Cal. 406; *Wheaton* v. *Insurance Co.*, 76 Cal. 429; *Slache* v. *St. Paul Fire & Marine Ins. Co.,* 49 Wis. 89; *Smith* v. *Insurance Co.*, 62 N. Y. 85.) In the case last cited it was said: "The time for investigation as to breaches of warranty is when a claim is made of payment; and if the company elects to pay the claim, or what is equivalent to adjust it by an independent

contract, it cannot afterward, in the absence of fraud, retract or fall back upon an alleged breach of warranty."

The claim of plaintiff after satisfying its lien to the extent of the value of the property purchased under foreclosure sale, $1,000, was in excess of the amount of the insurance, and if it was entitled to recover at all, it was for the $1,200. (*Insurance Co.* v. *Stinson,* 103 U. S. 25.)

A receipt from Newkirk was not necessary to the security or discharge of defendant. A party entitled to maintain an action may, upon payment being made to him, give a valid discharge from the cause of action. Under our law an action may be maintained by the party in interest. The courts, with some exceptions, hold that the party to whom the loss is payable may sue. (*Cone* v. *Niagara Ins. Co.,* 60 N. Y. 619; *Chamberlain* v. *New Hampshire etc. Ins. Co.,* 55 N. H. 249.) It is sufficient to say under this head that decisions to like effect are to be found emanating from the courts of Missouri, New Jersey, Illinois, and many other states. Where the proceeds of the policy are to go in part to the assured and in part to others, the authorities are not uniform as to the proper plaintiff; the better opinion, however, is believed to be that all the beneficiaries may unite as plaintiffs in the action.

We have followed counsel for appellant through the several objections made by him as to the sufficiency of the evidence to support the findings, and in his objections to the sufficiency of the facts to uphold the judgment, and it would have been more satisfactory to us, and perhaps to him, to have adopted the same course herein, but the necessity of confining our opinions within briefer limits than such method would have rendered necessary has prevented.

The case seems to have been fairly tried and wisely determined, and the judgment and order appealed from should be affirmed.

TEMPLE, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion, the judgment and order appealed from are affirmed.

McFARLAND, J., FITZGERALD, J., DE HAVEN, J.