[Civ. No. 393. Fourth Appellate District.—April 22, 1932.]

H. K. GILMORE, etc., Appellant, v. EUREKA CASUALTY COMPANY (a Corporation), Respondent.

Loren A. Butts, Samuel F. Hollins and L. N. Barber for Appellant.

Charles X. Arnold, Philip Conley, and Conley, Conley & Conley for Respondent.

MARKS, J.—This action was instituted by appellant to recover the value of an Auburn automobile alleged to have been embezzled by Carl LaDuxe, who was also known as George Carlton, G. E. Carlton and George E. Carlson. Judgment went for respondent and appellant is here on appeal from the judgment.

Appellant was conducting a business in the city of Fresno under the name of Motor Vehicle Loan Company, and J. Clarence Rice was conducting a business under the name of Rice Securities Company in the city of Hanford, California. Respondent is a California corporation engaged in the business of writing automobile casualty and indemnity insurance. At all times material to this appeal appellant was its

general agent in the city of Fresno with authority to execute and deliver its policies.

On April 24, 1928, Carl LaDuxe had resided in Fresno for less than two months and was in possession of an Auburn coupe and its *indicia* of title. The automobile was originally sold by the Auburn Automobile Company to the Auburn Wichita Company of Wichita, Kansas, on or about June 11, 1928. It was then sold to George Carlton (Carl LaDuxe) for $2,550, which was paid by a used car, which "Carlton" represented was free and clear of encumbrances, and a mortgage on the Auburn for $1200. The mortgage was dated June 16, 1928, and was duly recorded on June 21, 1928. Under the laws of Kansas this vested the title to the mortgaged property in the mortgagee. The indebtedness was not paid and the mortgage was not released. It was assigned to the Union Finance Company, a corporation with its offices in Wichita, Kansas. It subsequently developed that the used car which was given in part payment of the Auburn automobile was encumbered with a mortgage in the sum of $700, which was then unpaid. "Carlton" applied for a license for the Auburn automobile in Kansas on June 14, 1928. One was issued on June 18, 1928.

This automobile next appears in the state of Oklahoma. By an application dated June 14, 1928, Carl LaDuxe applied for a certificate of title to it. An Oklahoma certificate of registration was issued on the automobile to Carl LaDuxe. By a bill of sale on a form bearing the name of "P. G. Orr Book and Stationery Co., 327 Douglas Ave., Wichita, Kansas," and bearing date the eleventh day of June, 1928, "Geo. Carlton" purported to sell the Auburn automobile to "Carl LaDuxe". The application for registration of the automobile in Oklahoma was based upon the title derived through the bill of sale from "Carlton" to "LaDuxe". On August 2, 1928, "LaDuxe" applied for a "non-resident paid automobile license" for the Auburn at the Fresno branch of the division of motor vehicles of California. On August 2, 1928, a nonresident registration certificate was issued to the automobile showing Carl LaDuxe as the legal and registered owner of the car. On the back appears an indorsement of a first sale from "Carl LaDuxe", legal and registered owner, to A. C. Franzke, a dealer, and a second sale to "Carl LaDuxe" with the signature of A. C. Franzke

appearing on the line above the words "the name of the holder of mortgage, note or lease". On August 2, 1928, a "Report of Sale by Registered Dealer" of the Auburn automobile was made to the division of motor vehicles showing a sale from A. C. Franzke to "Carl LaDuxe". On August 27, 1928, another registration certificate was issued showing "Carl LaDuxe" as registered owner and Rice Securities Company, Hanford, California, as legal owner of the car. On the reverse side over the words "signature of legal owner—agreeing with name on other side—releasing his equity" is "Rice Securities Co. by J. Clarence Rice". On March 14, 1929, the Rice Securities Company, by a written assignment, transferred all of its right and interest in the automobile and its cause of action against respondent to appellant. The automobile and LaDuxe disappeared from Fresno shortly after August 24, 1928, and were not thereafter found. Under date of September 17, 1928, by a bill of sale on a form printed by a firm in Lincoln, Nebraska, "Carl LaDuxe" sold the Auburn automobile to "H. J. Berney", who, on September 18, 1928, applied to the motor vehicle department of the state highway commission of Oklahoma for a certificate of title to the Auburn. Certain similarities in the bill of sale and the application, just mentioned, to others in evidence might indicate that "Berney", "Carlton", "Carlson", and "LaDuxe" were all names assumed by the same person.

It is evident from the record that "LaDuxe" did not sell the automobile to A. C. Franzke nor did Franzke sell it to LaDuxe as a sale of a motor vehicle is generally understood. LaDuxe wished to borrow money from Franzke and indorsed the registration certificate to him who in turn indorsed it back and the two then executed a conditional sales contract of the automobile to give Franzke security for his loan.

On August 24, 1928, "LaDuxe" applied to appellant for an additional loan on the automobile. The two went to the place of business of Franzke where appellant repaid him the amount of his loan to "LaDuxe" and secured the registration certificate and contract. The two returned to the place of business of appellant, where the loan was consummated, he retaining possession of the automobile for three days while "LaDuxe" was away from Fresno. The

two executed a conditional sales contract with LaDuxe named as purchaser. The contract recited that the selling price of the automobile was $2,550 with $1323.44 paid in cash and the balance of $1226.56 payable in twelve equal monthly installments. As a matter of fact the transaction was a loan from appellant to "LaDuxe" secured by the conditional sales contract. The actual amount paid out by appellant to Franzke and "LaDuxe" was $1,000. The balance of the $226.56 was made up of $25.70 premium on the policy furnishing the subject matter of this action, $90.86 interest, and other charges in the sum of $110, which made the contract usurious.

When the conditional sales contract was signed, and while it was still in the possession of appellant, he, as general agent of the respondent, executed a contract of insurance whereby the respondent agreed to indemnify the Rice Securities Company as assured or vendor, or "Carl LaDuxe" as vendee, in the sum of $1200 against fire and theft, robbery and pilferage and the Rice Securities Company against all direct loss or damage which it might sustain, caused by the fraudulent concealment or disposal of the automobile by "LaDuxe". Appellant then sent the registration certificates, conditional sales contract with his written assignment thereon and the insurance policy to the Rice Securities Company and received payment therefor. He paid respondent the insurance premium less his commission. As both "LaDuxe" and the automobile disappeared and no payments were made on the conditional sales contract, demand was made upon respondent for payment under the concealment or disposal clause of the policy. Respondent then learned for the first time the true nature of the transactions and denied liability on its contract. Appellant repaid the Rice Securities Company its money, took the assignments we have mentioned and instituted this action to recover on the policy. Judgment went for respondent and appellant is here on appeal therefrom.

Under the heading "Warranted by the Assured" in the body of the policy it is stated that the automobile was purchased new in April, 1928, for $2,550, and that there was no lien, mortgage or other encumbrance thereon except the lease contract providing for the payment of $1226.56 in monthly installments already mentioned. The policy con-

tains the following provisions: "It is understood that the automobile described in the attached policy has been sold and delivered by the said Rice Securities Co. Vendor, to Carl LaDuxe Vendee, under a Conditional Sales Contract, title retaining note or subject to chattel mortgage, under which the unpaid balance is $1,226.56 copy of which Conditional Sales Contract, title retaining note or chattel mortgage (as the case may be) shall be furnished to the company by the said Vendor on demand . . . This entire policy shall be void if the Assured. has concealed or misrepresented any material fact or circumstances concerning this insurance or the subject thereof; or in the case of any fraud, attempted fraud, or false swearing by the Assured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

The following findings by the trial court, some of which are more properly conclusions of law, are amply supported by the evidence: "The court finds that it is true that a document was signed by said parties purporting on its face to constitute a conditional sale of said automobile by Motor Vehicle Loan Co. to Carl LaDuxe, but said document in truth and in fact evidenced a loan by Motor Vehicle Loan Co. to Carl LaDuxe and did not in truth and in fact constitute or evidence a sale of said automobile. It is true that, according to the terms and conditions of said document so signed by said parties as aforesaid, the said Carl LaDuxe agreed to pay to plaintiff the sum of Twelve Hundred Twenty-six and 56/100 Dollars ($1226.56), payable at the rate of One Hundred Two and 22/100 Dollars ($102.22) per month, the first payment to be made on the 24th day of September, 1928, and on the 24th day of each and every month thereafter until the said sum of Twelve Hundred Twenty-six and 56/100 Dollars ($1226.56) had been fully paid; and it is true that said document recited and purported to state that title to said automobile was to be and remain in the plaintiff until all of the payments therein provided for had been made and all of the terms and conditions of said purported contract fully complied with by the said Carl LaDuxe. It is not true that at said time and place plaintiff delivered possession of said automobile aforesaid to said Carl LaDuxe, and in this connection the Court finds that the said Carl LaDuxe, prior to and at the time

of the execution of said document and thereafter maintained and had possession of said automobile. It is true that after the execution of said document, plaintiff transferred and set over unto J. Clarence Rice, an individual doing business under the firm style and name of Rice Securities Co., all of his right, title and interest in and to said contract and all of the right, title and interest which he had in and to said automobile.''

''That said policy of insurance hereinbefore referred to, together with the dealer's contract full coverage endorsement, was issued under and pursuant to the following express representations and warranties of the insured, to-wit (1) that on or about the 24th day of August, 1928, Rice Securities Co. as vendor sold the said automobile to Carl LaDuxe as vendee; (2) that the total selling price of said automobile was two thousand five hundred fifty dollars ($2,550) and that there was paid in actual cash at the time of the execution of said purported conditional sales contract the sum of thirteen hundred twenty-three and 44/100 dollars ($1323.44), with a balance due under the terms and conditions of said purported contract of twelve hundred twenty-six and 56/100 dollars ($1226.56) payable in twelve equal monthly installments of one hundred two and 22/100 dollars ($102.22) each. The court finds that in truth and in fact the Rice Securities Co. did not sell the said automobile to said Carl LaDuxe; that in truth and in fact the said automobile was not sold by Rice Securities Co. or Motor Vehicle Loan Company to Carl LaDuxe for a total consideration of two thousand five hundred fifty dollars ($2,550.00) and there was not paid in cash by the said Carl LaDuxe to Rice Securities Co. or Motor Vehicle Loan Company the sum of thirteen hundred twenty-three and 44/100 dollars ($1323.44) or any other sum of money; that in truth and in fact the purported contract of conditional sale hereinbefore referred to between Motor Vehicle Loan Company and Carl LaDuxe, evidence a loan by Motor Vehicle Loan Company to Carl LaDuxe, and did not in truth and in fact constitute or evidence a sale of said automobile. The court finds that said warranties and representations made by said Rice Securities Co. were relied on by the defendant, Eureka Casualty Company, and the said policy of insurance, together with dealer's contract full cov-

erage endorsement, was issued by defendant in reliance upon said representations and warranties; that defendant did not know of the falsity of said representations or of the breach of said warranties. . . .

"The court finds that at the time of the issuance of said purported policy of insurance to Rice Securities Co. of Hanford, and Carl LaDuxe above referred to, plaintiff herein, H. K. Gilmore, was an agent of defendant, Eureka Casualty Company, a corporation, authorized and entrusted by defendant to write policies of insurance for defendant at Fresno, California, and vicinity; that the said plaintiff, H. K. Gilmore, wrote the said policy of insurance above referred to; that the said H. K. Gilmore wrote the said policy of insurance for his own benefit and that he did not ever or at all make disclosure to Eureka Casualty Company of the true facts concerning said transaction."

We find the following pertinent provisions in the Civil Code: "A statement in a policy, of a matter relating to the person or thing insured, or to the risk, as a fact, is an express warranty thereof." (Civ. Code, sec. 2607.) "A breach of warranty, without fraud, merely exonerates an insurer from the time that it occurs, or where it is broken in its inception prevents the policy from attaching to the risk." (Civ. Code, sec. 2612.)

In construing these sections it has been held that a breach of a material warranty on the part of the insured avoids the policy of insurance and no recovery can be had thereon. (*Solomon* v. *Federal Ins. Co.*, 176 Cal. 133 [167 Pac. 859]; *Breedlove* v. *Norwich etc. Ins. Society*, 124 Cal. 164 [56 Pac. 770].)

Appellant was the general agent of respondent and really wrote the policy for his own benefit. He had knowledge of the true facts of the transactions which he did not communicate to his principal. A general agent who in effect writes a policy of insurance protecting himself against loss should not be permitted to recover against his principal on the policy where he has knowledge that material representations made in the policy are untrue and does not communicate such knowledge to his principal.

Respondent received and retained the premium on the insurance policy paid to it by appellant. In an amendment to its answer filed in October, 1929, it tendered to

appellant the $25.70 premium and accrued interest in the sum of $2.02, which tender was not accepted. Appellant now contends that because the tender was not made promptly upon the discovery of the breach of warranty, respondent could not defend upon the ground of the misstatements to it. This contention was decided adversely to appellant in the case of *Goorberg* v. *Western Assur. Co.*, 150 Cal. 510 [119 Am. St. Rep. 246, 11 Ann. Cas. 801, 10 L. R. A. (N. S.) 876, 89 Pac. 130, 133], where it was said: "The respondent contends that whatever construction be put upon the policy the judgment must be affirmed, because there was uncontradicted testimony to the effect that shortly after the fire the company ascertained the true state of the title, and for a period of several months thereafter and up to the time of the trial, made no offer to return the premium. During all this time, however, it denied liability. It may be conceded that if, by reason of a breach of warranty as to title, no risk ever attached, the insured was entitled to a return of his premium. (Civ. Code, sec. 2617.) But the insurer's delay in offering to repay it (assuming the delay to have been unreasonable) did not forfeit the right to defend for such breach. The cases cited to the proposition that a party cannot rescind a contract without restoring what he has received under it are not in point. The defendant is not in this action seeking to rescind the contract sued upon; it is standing upon the contract, and insisting that under its terms there is no liability. Nor can the mere retention of the premium, *after the loss has occurred,* and where the liability is steadfastly denied, constitute either a waiver of the defense or an estoppel. To constitute such waiver or estoppel by the action or non-action of the insurer after the loss, it is essential 'that one party should have relied upon the conduct of the other, and been induced by it to put himself in such a position that he would be injured if the other should be allowed to repudiate his action.' (*McCormick* v. *Orient Ins. Co.*, 86 Cal. 260 [24 Pac. 1003]; *McCormick* v. *Springfield F. & M. I. Co.*, 66 Cal. 361 [5 Pac. 617].) Here nothing was done which could have led the insured to believe that the defendant would not take advantage of the breach of warranty. On the contrary, it persistently asserted its reliance upon such breach."

The trial court failed to dispose of the $27.72, the premium and interest tendered to appellant by respondent in the amendment to its answer. To finally dispose of the case the judgment should be amended to provide for the recovery of this sum from the respondent.

It is ordered that the last paragraph of the judgment be amended by striking from the opening clause thereof the following: "It is ordered, adjudged and decreed that the plaintiff take nothing by reason of said action," and in lieu thereof the following be substituted: "It is ordered, adjudged and decreed that the plaintiff recover of and from the defendant the sum of $27.72."

The judgment as hereby amended is affirmed.

Barnard, P. J., and Jennings, J., concurred.