[Civ. No. 9659. Second Appellate District, Division One.—March 13, 1936.]

G. M. HARGETT, Respondent, v. GULF INSURANCE COMPANY OF DALLAS, TEXAS (a Corporation), Appellant.

G. M. HARGETT, Respondent, v. FIREMEN'S INSURANCE COMPANY OF NEWARK, NEW JERSEY (a Corporation), Appellant.

G. M. HARGETT, Respondent, v. MONARCH FIRE INSURANCE COMPANY OF CLEVELAND, OHIO (a Corporation), Appellant.

Hindman & Davis and Angus C. McBain for Appellants.

Carlos S. Hardy for Respondent.

SHINN, J., *pro tem.*—Plaintiff brought separate actions upon three policies of fire insurance, and upon a trial in which the actions were consolidated, recovered judgment for the amount of each policy. Defendants Gulf Insurance Company, Firemen's Insurance Company and Monarch Insurance Company appeal from separate judgments entered against them.

The insured property which was destroyed by fire consisted of certain incubators, which were separately insured by the defendant companies under separate policies, which provided that the insurer would not be liable for loss or damage to any of the insured property while encumbered by chattel mortgage unless written consent of the insurer was endorsed thereon or attached thereto. At the time the policies were issued the property was not encumbered by chattel mortgage, but at a later date it was so encumbered to Farmers and Merchants Bank of Watts. Plaintiff, while admitting his failure to procure written assent of the companies to the chattel mortgage, relies upon alleged waivers of the provisions which required written consent. The court found in each case that before and at the time the chattel mortgage was given, plaintiff gave notice to the insuring company of the execution of the mortgage and that each company had knowledge thereof and failed, refused and neglected to make any endorsement with respect to said mortgage on plaintiff's policy of insurance. Upon these findings the court held the companies had waived compliance with said provisions of the policies. The sufficiency of the evidence to support these findings is challenged by appellants.

One E. H. Rose was an insurance agent at Watts. The policies in question were procured through him and the premiums were paid to him. Premiums upon the Firemen's and Gulf policies were paid before the property was destroyed. The premium on the Monarch policy was paid to Rose shortly after the fire and was transmitted by him to an agent at Alhambra, California, who had countersigned the policy. The note and chattel mortgage were executed and delivered on or about January 21, 1933, long after the policies were issued. On January 13, 1933, the agent Rose, having come to plaintiff's office upon business other than that of defendant com-

panies, was informed by plaintiff that he had given a chattel mortgage on the incubators and would take the policies to the mortgagee bank. Nothing further was said about the policies, no request was made by plaintiff that any endorsements should be made thereon, and Rose said nothing whatever on the subject. Rose did not report the matter to any of the companies nor to any of the representatives thereof. Within two or three days after this conversation plaintiff took the policies to the bank where they remained until after the fire, which occurred on February 14, 1933.

The foregoing is all of the evidence which tends in any manner to support the findings in question. This evidence was not sufficient to warrant the findings. Plaintiff's evidence did not establish notice to the companies of the execution of the mortgage. It was not shown that Rose received information as to the chattel mortgage within the scope of his authority as agent for any of the defendant companies. The court found inferentially but not directly that Rose received the information within the scope of his authority. It appears that Rose held a license authorizing him to act as agent for each company and that he received his appointments, as agent, through others who were the general agents of the companies in the district. No evidence was introduced as to any written authority conferred upon Rose by any of the companies or by any of their general agents. He appears to have acted as a mere local agent who accepted applications for insurance, procured the issuance of policies, delivered them and collected premiums thereon. He was not a general agent, which is to say that he did not possess general powers to effect contracts of insurance, to fix rates of premiums, to consent to changes, to make endorsements or to cancel policies. As a local agent he was without power to consent to the chattel mortgage and thereby continue the insurance in force notwithstanding the mortgage. (*Sharman* v. *Continental Ins. Co.*, 167 Cal. 117 [138 Pac. 708, 52 L. R. A. (N. S.) 670]; *Madsen* v. *Maryland Casualty Co.*, 168 Cal. 204 [142 Pac. 51].) Neither actual nor ostensible authority to make or to waive endorsements upon the policies was shown. There was no evidence that Rose had ever made endorsements upon policies or waived the conditions of policies with reference thereto. He did not represent himself as having such authority nor was there evidence that plaintiff believed him to

be so authorized. The mere fact that he had been appointed agent for the companies at Watts and had procured insurance for his customers through the companies' general agents, was not sufficient to show ostensible authority to act in matters arising after the policies were issued. As Rose was not shown to be more than a local agent whose duties ended with the delivery of the policies and the collection of premiums, and as he was not shown to have had ostensible authority to do more than this, the information given to him concerning the chattel mortgage was not received by him within the scope of his employment; it was not notice to the companies, and therefore the finding that the companies had knowledge of the mortgage is not supported by the evidence.

Even though it had been established that Rose was a general agent, the evidence would still be insufficient to show that the companies waived compliance with the conditions of the policies. By the terms of the policies no officer or agent had authority to waive any provision or condition of the policies except by writing endorsed thereon or attached thereto. These provisions may not be ignored. They are valid and must be given effect the same as any other provisions. (*Fidelity & Casualty Co.* v. *Fresno Flume etc. Co.,* 161 Cal. 466 [119 Pac. 646, 37 L. R. A. (N. S.) 322]; *Westerfeld* v. *New York Life Ins. Co.,* 129 Cal. 68 [58 Pac. 92, 61 Pac. 667]; *Iverson* v. *Metropolitan Life Ins. Co.,* 151 Cal. 746 [91 Pac. 609, 13 L. R. A. (N. S.) 866]; *Madsen* v. *Maryland Casualty Co., supra.*) The rule relied upon by plaintiff and supported by the great weight of authority is, that after a breach has occurred which would avoid or forfeit a policy, unless consented to by the company and a proper officer has knowledge thereof and with such knowledge the company leads the assured to rely upon his policy as a valid policy, it will not be heard to allege such breach against a claim for subsequent loss occurring at a time when, from the conduct of the company, the assured had every right to believe that his property was protected by the policy. (*Arnold* v. *American Ins. Co.,* 148 Cal. 660 [84 Pac. 182, 25 L. R. A. (N. S.) 6]; *West Coast Lumber Co* v. *State Inv. & Ins. Co.,* 98 Cal. 502 [33 Pac. 258]; *Murray* v. *Home Benefit Life Assn.,* 90 Cal. 402 [27 Pac. 309, 25 Am. St. Rep. 133]; *Fishbeck* v. *Phenix Ins. Co.,* 54 Cal. 422; *Farrar* v. *Policy Holders Life Ins. Assn.,* 3 Cal. App. (2d) 87 [39 Pac. (2d) 229].) The principle

of these cases is that the breach terminates the liability of the insurance company and creates an obligation to return to the insured the unearned portion of the premium which the company has not the right to retain, thus imposing upon the company having knowledge of the breach a positive duty to elect between cancellation of the policy and waiver of the breach. If the company remains silent and fails to cancel or rescind the policy and the assured is actually misled thereby into believing that his policy is valid and in force the company is estopped to rely upon the breach. The rule would be applicable here if the breach had been one which avoided or forfeited the policies. Such, however, is not the case.

■ Upon the giving of the chattel mortgage the policies did not become void nor were they forfeited. There was a mere suspension of insurance coverage as to such of the insured property as was encumbered by the chattel mortgage and while it was so encumbered. This suspension was temporary and the coverage would have been restored upon satisfaction of the debt or release of the property from the lien and it would have been restored as to any portion of the property that might have been released from the lien. The policy itself remained in force. There was no obligation on the part of the companies to return any of the premiums; in fact the policies provided that suspension of insurance would not entitle the assured to the return of any part of the premiums, nor were the companies under the duty of giving notice to the assured that the insurance had been suspended. He must be presumed to have known that. The circumstances were not such as to call upon the companies or any agent of the companies to take any action whatever of their own, nor were they under the duty to suggest to plaintiff any action which he should take in the premises. The essential elements of estoppel are entirely wanting. In remaining silent and retaining the premiums paid, the companies did not fail in any duty they owed the assured under the contracts or otherwise.

The facts of this case bring it directly within the holding of the Supreme Court in *Steil* v. *Sun Ins. Office,* 171 Cal. 795 [155 Pac. 72]. In that case goods were insured while contained in the Chronicle building and not elsewhere. Some of them were removed to another building, thus suspending the insurance as to the removed portion, without annulling the policy. It was said as to this situation: ''There being

no condition or covenant against removal, the result would be that while such removal would, for the time being, terminate the risk incurred by the company, it would not avoid the policy. If the goods were subsequently returned, the company would be liable, as before, for a loss occurring to them while in the building. In order to continue the insurance upon the goods, or, in other words, to carry it to the goods in the new location, something more was required than a mere notification by the assured to the insurer of the fact that the goods were, or were about to be, removed. That fact alone would only suspend the insurance risk. The insurer must be informed, or be given good cause to believe, that the party insured desired to have the insurance on the goods continued· in the new place, that he wished a modification of the policy to make it cover the goods in the new location, and must then, by positive act, or by failure to act, cause the insured to believe that the insurer consented to such transfer or modification, and that the goods were covered by the policy. Something in the nature of a new agreement, either express, or implied from conduct or words, or created by estoppel, was necessary.''

No distinction may be drawn between temporary suspension of insurance by reason of the removal of the assured goods, and a temporary suspension by reason of the encumbrance of the property by chattel mortgage. In neither case is the policy terminated or avoided. If the plaintiff had desired to have the insurance continue, notwithstanding the chattel mortgage, it was his duty to notify the companies of the mortgage, to request the endorsements of his policies, and to exact some assurance that endorsements would be made ·or that the insurance would be continued in force without them. The evidence fails to show that plaintiff met any of these requirements.

The fact that the premium was paid to and accepted by the Monarch company within a few days after the fire and was not returned in whole or in part to plaintiff is not important and has no tendency to affect the rights of that company in the present litigation. The rights of the parties were fixed at the time of the loss. The insurance was not then in force but it had been in force before the chattel mortgage was given, and the company was entitled to the premium. (Civ. Code, secs. 2616 and 2618, then in force; *Gilmore* v.

*Eureka Casualty Co.,* 123 Cal. App. 20 [10 Pac. (2d) 810].)

█   Even though at the time the premium was paid to the Monarch company the company had actual knowledge of the existence of the chattel mortgage, which fact does not appear to have been established, the property had already been destroyed.  Plaintiff must rely entirely upon the doctrine of estoppel to foreclose the defenses interposed by this company; obviously no estoppel could have arisen after the destruction of the property.  An estoppel arises when the assured, because of some act or conduct of the insurer, has been dissuaded from obtaining other insurance upon the property and has proceeded to rely upon the validity of the policies he holds.  Plaintiff was not, nor could he have been, prejudiced in any way by the acceptance and retention of the premium by the Monarch company after the destruction of the property.  The evidence of plaintiff in the particulars we have pointed out falls far short of establishing an estoppel against any of the companies to rely upon the provisions of the policies, under which the property destroyed by the fire was not at the time covered by insurance.

█   As to the cases of the Gulf company and Monarch company a question of jurisdiction is involved.  Each policy was for $2,000 and the prayer of each complaint was for that sum, together with interest at seven per cent per annum from March 23, 1933, the date proofs of loss were presented to the companies.  If the demands for interest are to be disregarded, then the municipal court had exclusive jurisdiction of each of these actions under the provisions of section 89 of the Code of Civil Procedure, which fix the jurisdiction of the municipal court at demands of $2,000 or less, exclusive of interest, or where the value of the property in controversy is $2,000 or less.  It is contended by plaintiff that the demands for interest must be included because compensation for the detention of money where not allowed by statute can be allowed as damages but not as interest.  This theory, while supported by authorities cited from other jurisdictions, cannot be held applicable to the present case in view of the statutory law of this state.  █   Interest is defined by section 1915 of the Civil Code as follows: ''Interest is the compensation allowed by law or fixed by the parties for the use, or forbearance, or detention of money.''  Demands falling within this definition must be excluded in determining questions of

jurisdiction of the municipal court. Plaintiff's claims are for compensation for the detention of money after it fell due. No amount was fixed by the parties. Such compensation may be recovered as interest if it is allowed by law. Plaintiff had a right to receive interest upon any amounts to which he may have been entitled under the policies, as compensation allowed by law for the detention of money. (Civ. Code, sec. 3287; *Coulter* v. *Howard,* 113 Cal. App. 208 [298 Pac. 140]; *Pacific Coast Adjustment Bureau* v. *Indemnity Ins. Co.,* 115 Cal. App. 583 [2 Pac. (2d) 218]; *Jacobs* v. *Farmers Mutual Fire Ins. Co.,* 5 Cal. App. (2d) 1 [41 Pac. (2d) 1960].) Therefore the interest demanded must be excluded from the amount of the demand in each case and when that is done the amounts fall within the exclusive jurisdiction of the municipal court. (Art. VI, sec. 5, Const.; *Larson* v. *Du Bain,* 135 Cal. App. 433 [27 Pac. (2d) 393].)

While it was alleged in the complaint in each of these actions that the value of the property destroyed was largely in excess of $2,000, and that fact was denied, nevertheless the issue to be tried related entirely to the amount of the loss and it therefore cannot be said that property of the value of more than $2,000 was in controversy. The municipal court had exclusive jurisdiction of the actions against Gulf company and Monarch company and they were improperly brought in the superior court.

The judgments are reversed as to all of the appellant companies.

Doran, J., concurred.

Houser, P. J., concurred in the judgment.