[Civ. No. 20850.   Second Dist., Div. One.   May 4, 1955.]

LOUISE ROBINSON, Appellant, v. NATIONAL AUTO-
MOBILE AND CASUALTY INSURANCE COMPANY
(a Corporation), Respondent.

Jacob W. Silverman for Appellant.

Thomas P. Menzies and James O. White, Jr., for Respondent.

WHITE, P. J.—This is an appeal from a nonsuit granted and judgment rendered thereon in favor of defendant in an action brought for payment on account of an alleged theft of personal property, under a "residence and outside theft policy" of insurance issued by defendant.

By her complaint, plaintiff alleged the issuance of the policy of insurance on or about April 2, 1953, for the period beginning March 31, 1953, to March 31, 1954. That by the policy plaintiff was insured against loss by theft of her jewelry and other personal and household effects at her residence in Beverly Hills, California, in an amount not exceeding $5,000. It was then alleged in the complaint that about May 12, 1953, plaintiff's premises were burglarized by person or persons unknown to her and various items of said insured property were stolen, all to her loss in a sum exceeding the policy limits of $5,000. The complaint then set forth that about June 1, 1953, plaintiff filed with defendant insurer written proof of loss and asked payment of the sum of $5,000, but the defendant rejected said claim and refused to pay the sum demanded or any part thereof.

By its answer defendant admitted issuance of the policy, filing of a claim of loss and rejection thereof, but denied any liability to plaintiff under the terms of said policy. Defendant also set forth five separate and affirmative defenses, as follows: (1) refusal of plaintiff to file a proof of loss in the form and manner required by defendant; (2) refusal of plaintiff to cooperate with defendant as required by terms of the policy, refusing to answer questions asked of her by de-

fendant's representative and wilfully making incorrect statements respecting her claim; (3) false and fraudulent statements made by plaintiff in her application to defendant for issuance of the policy, as to whether plaintiff had theretofore, during the preceding five years, sustained or received indemnity for loss or damage by burglary, robbery, theft or larceny; (4) that the proof of loss furnished to defendant by plaintiff was false, fraudulent and untrue in its entirety; and (5) that plaintiff falsely and fraudulently declared and represented to defendant that during the five years preceding the issuance of the policy, no insurer had cancelled any burglary, robbery, theft or larceny insurance issued to her, or declined to issue such insurance.

At the trial plaintiff testified as to the issuance of the policy, her loss through a burglary, filing of her proof of loss and cancellation of the policy of defendant on July 29, 1953, to take effect as of August 5, 1953. She testified that of the total premium amounting to $34.50 previously paid to defendant, the latter, on August 5, 1953, refunded to her $22.49, at the time of cancellation of the policy. Plaintiff also testified that on the day she received the policy she contacted Mrs. Elizabeth Thatcher, an insurance clerk in the office of defendant's underwriting agents, through whom the policy was issued, and directed Mrs. Thatcher's attention to incorrect statements contained in the policy with regard to previous cancellations of policies and losses, and that she acquainted Mrs. Thatcher with all of plaintiff's prior losses and cancellations. Plaintiff further testified that prior to the issuance of the policy she had advised Mrs. Thatcher of all prior losses and cancellations. However, Mrs. Thatcher testified that plaintiff told her she "only had one previous cancellation," but did not disclose two cancellations by other insurance companies. There was also testimony as set forth by defendant in its brief and substantiated by the record that, "On June 1, 1953, plaintiff filed a proof of loss [Ex. 2], listing a white mink stole, pearl wrist watch and various items of jewelry allegedly stolen from plaintiff's apartment . . . on May 12, 1953 . . . Pursuant to its right to do so under the policy of insurance [Ex. 1, Par. 3 of Conditions], defendant, through its attorney, took an examination under oath of the plaintiff [Ex. B], during the course of which examination plaintiff refused to answer questions respecting the following: Acquisition of a safe deposit box . . . ; acquisition of cash for the re-acquisition of jewelry in August

of 1952 . . . ; listing of any jewelry in bankruptcy proceeding . . . ; reporting of sale of jewelry in bankruptcy proceeding . . . ; and respecting disclosure in bankruptcy of all of her assets. . . .

"On May 26, 1952, plaintiff filed in bankruptcy. . . The debtor's petition, signed and verified by the plaintiff [Ex. A], shows that her reported assets on that date consisted of 'household goods and furniture, household stores, wearing apparel and ornaments of the person in the value of $500.00,' and that the total value of the personal property consisted of $500.00. . . . Under the 'Summary of Debts and Assets' of the debtor, the total of househeld goods was listed at $500.00, the total for automobiles and other vehicles as $150.00 and 'other personal property, none' . . . Under Schedule B-5 of Exhibit A the plaintiff claimed as exempt the entire amount of $500.00 on the household goods and the sum of $150.00, being her equity in the automobile.

"Respecting the issuance of the policy of insurance, it is shown by Exhibit 1 (the policy) that plaintiff stated that she had had one prior loss and no prior cancellations. Plaintiff, at trial, admitted that she had actually had a total of five losses . . . and a total of three cancellations . . . The evidence most favorable to plaintiff [which, parenthetically, was stricken ——. . .] is plaintiff's testimony that she told a Mrs. Thatcher, an employee of defendant's underwriting agent, 'they had cancelled' . . . , that Evanston & Company cancelled one of her policies . . . , and when asked whether or not the cancellation from Evanston was the only one she had told about, her answer was 'I told her that Evanston & Company have' . . ."

From the foregoing, it is manifest that the main and decisive question presented on this appeal is whether a nonsuit was properly granted upon the uncontradicted and unexplained refusal of an insured to answer material questions in an examination under oath, provided for in the policy, and the manifest and unrefuted testimony that the insured failed to inform the insurer of prior losses and cancellations which unquestionably induced issuance of the policy.

■ The policy of insurance involved in this action contains under paragraph 3 of "Conditions," the following:

". . . Upon the company's request, *the insured and every claimant hereunder shall submit to examination by the company,* subscribe the same, under oath if required, and produce for the company's examination all pertinent records, all at

such reasonable times and places as the company shall designate, and shall cooperate with the company in all matters pertaining to loss or claims with respect thereto.'' (Emphasis added.)

Condition No. 6 of the insurance policy provides:

''No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of the policy.''

Pursuant to the foregoing ''examination'' provision of the policy plaintiff, the insured, was examined under oath July 9, 1953, (this statement made under oath was admitted in evidence) at which time plaintiff was asked various questions which she refused to answer. The policy of insurance herein was issued by defendant April 2, 1953. The record shows that many of the items which plaintiff claimed were stolen had been acquired prior to May, 1952. On May 26, 1952, plaintiff signed and verified a debtor's petition in bankruptcy. This petition shows that plaintiff listed her total assets as consisting of ''household goods and furniture, household stores, wearing apparel and ornaments of the person $500.00,'' and that her entire assets consisted of said household goods and an automobile in which her interest was $150.

Possessed of the knowledge that the petition in bankruptcy was filed in May of 1952, listing no jewelry whatsoever and no effects of value in excess of $500, and that a proof of loss was filed on the policy herein on June 1, 1953, slightly more than one year after the bankruptcy petition was filed and in which proof of loss there was claimed a loss of personal property in excess of the policy limit of $5,000, and that plaintiff's proof of loss showed acquisition of considerable jewelry claimed to have been stolen prior to the date of her filing in bankruptcy, she was interrogated at the trial as follows:

''Q. Then did you list in your schedule of assets any of the jewelry that you had?''

Upon advice of her counsel plaintiff replied, ''I refuse to answer.''

In the same examination plaintiff refused to answer questions as to when, if at all, she acquired a safe deposit box. With reference to her claim that about the month of March, 1953, she had sold some jewelry to one Harold Frank and that about August she repaid Mr. Frank $800 and that the jewelry was returned to her, plaintiff was asked, ''Where did you get the cash?'' (which she paid to Mr. Frank). Upon advice of counsel she again refused to answer. Finally, plaintiff was

asked "Did you fully, fairly and truthfully, disclose in your bankruptcy proceedings all of your assets?" Again, on advice of counsel an answer was refused.

In view of the foregoing it can hardly be said that plaintiff complied with the "cooperation" clause of her contract. On the contrary, it is evident that by her conduct the insured deprived the insurer of its right to a full disclosure of the true facts, in disregard of the plain provisions of her contract (*Hickman* v. *London Assur. Corp.*, 184 Cal. 524, 527-534 [195 P. 45, 18 A.L.R. 742]; *Bergeron* v. *Employers' Fire Ins. Co.*, 115 Cal.App. 672, 675 [2 P.2d 453]; *Erreca* v. *Western States Life Ins. Co.*, 19 Cal.2d 388, 400 [121 P.2d 689, 141 A.L.R. 68]).

██ The contract of insurance with which we are here concerned contained the usual provision that the policy was issued in reliance upon the statements contained in the declarations of the insured. In the policy here in question we find the following declarations:

"Item No. 5.

"During the last five years the insured has not sustained or received indemnity for loss or damage by burglary, robbery, theft or larceny, except as herein stated: Loss in December 1952 of fur-ranch mink coat $5500—taken from home (fur floater)."

And Item No. 6 reads:

"During the last five years no insurer has cancelled any burglary, robbery, theft or larceny insurance issued to the insured, or declined to issue such insurance, except as herein stated: No exceptions."

The record herein contains ample evidence that plaintiff misstated facts both as to prior insurance losses and as to prior cancellations. She admitted she actually sustained a total of five losses and three cancellations. Plaintiff insists that the record ". . . fails to disclose that any of the alleged losses and cancellations were incurred by Plaintiff during the last five years prior to the issuance of the policy." This claim is not borne out by the record which discloses admissions by plaintiff that one cancellation occurred December 11, 1952, another about October 26, 1951, and that in August, 1952, she sustained a loss of insured jewelry for which she was paid $1,100. ██ In accepting the policy plaintiff made the warranties therein contained and a breach of warranty, where it is broken in its inception, prevents the policy from attaching to the risk (*Emery* v. *Pacific Emp. Ins. Co.*, 8 Cal. 2d 663, 669 [67 P.2d 1046]).

Plaintiff's contention that defendant had knowledge of the aforesaid matters contained in the declarations but, nevertheless, continued the policy in effect until after the loss, thereby lulling plaintiff into a sense of security, and that defendant did not rely upon the truth of the representations made in the declaration is not sustained by the record. It would challenge credulity and do violence to reason to say that either the testimony of Mrs. Thatcher or the admissions of plaintiff at the trial justify, as reasonable, the assumption that plaintiff made a full, fair and truthful disclosure in her declarations Nos. 5 and 6 contained in the policy.

█ Plaintiff next contends that the retention of the premium covering the date of loss and failure to return same when the policy was cancelled resulted in an estoppel. The California law is to the contrary. At all times, defendant denied liability under the policy. The rights of the parties were fixed at the time of the loss. Obviously, no estoppel could have arisen after the alleged theft of the property. At no time did defendant lead plaintiff to believe that it would not take advantage of the claimed falsities in her declarations contained in the contract of insurance. On the contrary, defendant persistently asserted its reliance upon such declarations as relieving it from liability under the contract. █ Furthermore, the cancellation of the policy and retention of a portion of the premium occurred after the asserted theft and filing of proof of loss in connection therewith, and did not create a waiver of the insurance company's right to deny liability, or an estoppel (*Gilmore* v. *Eureka Casualty Co.*, 123 Cal.App. 20, 28 [10 P.2d 810]; *Hargett* v. *Gulf Ins. Co.*, 12 Cal.App.2d 449, 456, 457 [55 P.2d 1258]; *Strauss* v. *Dubuque F. & M. Ins. Co.*, 132 Cal. App. 283, 294 [22 P.2d 582]).

Plaintiff's claim that she acquainted Mrs. Thatcher, a clerk for the underwriting agency, with all of the former's prior losses and cancellations does not aid her because that testimony was stricken as being in violation of the parol evidence rule, and Mrs. Thatcher, as heretofore indicated, testified that she knew of but one other loss and cancellation prior to issuance of the policy here in question.

Viewed in the light of well-known and established rules governing the court in the consideration of motions for a nonsuit, we are satisfied that the testimony in the case at bar shows without conflict that plaintiff's sustained losses and cancellations prior to the issuance of the policy of which

she failed to acquaint defendant or communicate to it (Ins. Code, §§ 330, 331, 332, 334). ██ It is well established in our law that prior insurance history of an insured is a material element in the acceptance or rejection of a risk (*Gates v. General Casualty Co. of America*, 120 F.2d 925, 927). Neither can it be questioned that the refusal of the insured to answer material questions at an examination under oath (provided for in the policy), shows a failure to give to the insurer that degree of cooperation required by the provisions of the policy here under consideration, and is a violation of the agreement of the insured to submit to such examination under oath.

For the foregoing reasons, the judgment is affirmed.

Doran, J., and Drapeau, J., concurred.