**TRI-STATE MUTUAL GRAIN DEAL-
ERS FIRE INSURANCE COM-
PANY, Appellant,**

**v.**

**C. R. MORRIS, Constance B. Honaker,
The Home Insurance Company and The
Canadian Fire Insurance Company, Ap-
pellees.**

**C. R. MORRIS and Constance B.
Honaker, Cross-Appellants,**

**v.**

**THE HOME INSURANCE COMPANY
and The Canadian Fire Insurance
Company, Appellees.**

**No. 16226.**

United States Court of Appeals
Ninth Circuit.

June 29, 1959.

Hindman & Davis, E. Eugene Davis, Los Angeles, Cal., for appellant.

Yale, Wilson, Summers & Yale, San Diego, Cal., Thomas P. Menzies, Los Angeles, Cal., for appellees.

Before CHAMBERS, BARNES and HAMLEY, Circuit Judges.

CHAMBERS, Circuit Judge.

Morris and Honaker hold first and second mortgages [1] on a restaurant property at Lakeside, California. The restaurant burned on September 27, 1955, with a loss which is agreed to be $7,890.

At the time of the fire, Tri-State had outstanding on the restaurant property a

---

1. The interests of Morris and Honaker were actually through the trust deed device which is common in California. Generally, the insurance policies referred to Morris and Honaker as "mortgagees." And "mortgage" and "mortgagee" are adequate for the purposes of this case.

policy of fire insurance in the amount of $7,000. This policy named Aubrey L. Owens and Emo T. Owens as the insured. Also outstanding at the same time on the same property was Canadian's policy dated September 20, 1955, in the amount of $6,000 and Home's policy of the same date in the amount of $6,000. In the latter two policies one Rose Gilmore was named as the insured. The mortgagees, Morris and Honaker, were named and provided for by loss payable clauses in all three policies. The total sum due both mortgage holders on the date of the fire was $8,148.07.

No one has paid the mortgagees under the fire policies, notwithstanding the fact that each of the companies had then received and had kept premiums that covered the day of September 27, 1955. And even now the companies keep the premiums for periods all covering the day in question,[2] although Canadian and Home cancelled their policies effective on dates in February, 1956, refunding the premiums paid on a prorata basis for the unexpired portion of terms on the policies.

Morris and Honaker, on the face of things adequately protected by insurance, find themselves caught by a controversy among the insurance companies. The circumstance out of which their controversy grows is that at the time of the fire the Owenses were selling the restaurant property to Gilmore. The transaction between the sellers and the buyer is found in written escrow instructions with an escrow agent, the Allison-McCloskey Company of San Diego. The escrow agreement was the parties' agreement. The sum of $500 was placed there by Gilmore when the escrow was opened and she was to deposit about $5,400 there before closing.

When the sale was completed, then Tri-State's policy was to be cancelled. In anticipation of this, Gilmore had purchased and paid for the Canadian and Home policies. Tri-State's position below and here is that it is willing voluntarily to stand the loss on a prorata basis with Canadian and Home. Canadian and Home deny all liability on the principal ground that at the time of the loss Gilmore (they say) had no insurable interest. Therefore, the policies were not in effect. They make other defenses too. The trial court agreed with Canadian and Home and rendered judgment for the full amount of Tri-State's policy: $7,000, in favor of the mortgagee plaintiffs. This court disagrees and holds the loss should be prorated among the three.

■ To us, it is clear enough under California law that this purchaser in possession, although the sale has not been closed yet, had an insurable interest. Under Section 1662 of the Civil Code of California, the risk of loss for the fire was on Gilmore—because she was in possession, even though the deed had not been delivered. Can the California law be so cruel as to hold that the risk of loss was on Gilmore but she could not insure against it? We think not and Sections 281 and 282 of the California Insurance Code would appear to support her.

■ The district court relied largely on the California case of Vierneisel v. Rhode Island Insurance Co., 77 Cal.App. 2d 229, 175 P.2d 63. There the suit was by the purchaser of a property who after the loss took an express assignment of the seller's claim against the insurance company which had insured the seller. The loss there occurred while a "sale" was in "escrow." Recovery was granted on a policy written by Rhode Island prior to the escrow. The policy was void if the insured (seller) was not the sole and unconditional owner at the time of loss. The Vierneisel agreement involving the projected sale does not appear in the reported decision, but it is significant that

---

**2.** At oral argument, one of counsel was queried as to why Home and Canadian, when they cancelled, did not return the whole premium. The response indicated some fear of the Insurance Commissioner of California prevented such a course.

At any event, California would appear not to estop an insurance company which keeps a premium from denying liability. Robinson v. National Automobile & Casualty Co., 132 Cal.App.2d 709, 282 P. 2d 930.

the court there seems to characterize the transaction as an "option to purchase." Also, it appears that the purchaser or proposed purchaser was not in possession. It is possible to argue with some reason that Vierneisel is authority for the proposition that there was no liability here on the part of Tri-State, although we doubt if the case should be extended that far.

We regard the decision in Central Manufacturers' Mutual Insurance Co. v. Jim Dandy Markets, Inc., D.C., 77 F. Supp. 171, affirmed 9 Cir., 172 F.2d 616, as wholly consistent with Vierneisel. Furthermore, it is entirely possible under California law, including Vierneisel, that if Gilmore had had only an option and had no possession and, thus, no insurable interest, Canadian and Home would have been liable to the mortgage holders who had an insurable interest. See Tarleton v. De Veuve, 9 Cir., 113 F. 2d 290, 297, 132 A.L.R. 343.

■ Below Canadian and Home raised the defenses that the policies were never delivered, the suit was brought too late, the suit was brought too soon because plaintiffs had not filed proof of loss with them and that the loss should be adjusted (according to the policy) with the insured specifically named. The district court on the record thought these special defenses just mentioned had no merit except possibly the last one. None of this group is here urged by appellees, Home and Canadian, although we would not say they have been waived. We accept the district court's view on these special defenses except we go further and hold that the last named defense—adjustment with the insured—is not valid. We believe, the agreement, taken as a whole including all the endorsements, did not foreclose the mortgagees from adjusting their loss with Home and Canadian and suing therefore. They had an interest to protect and a right to protect it. Canadian and Home knew of the loss months before suit was filed. Their risk was not increased by Mrs. Gilmore failing to file claims and we think her failure to act could not deprive plaintiffs, the lien holders, of their independent rights under the policies.

The loss should be prorated among Tri-State, Canadian and Home.

Reversed.