[Civ. No. 24651.   Second Dist., Div. One.   Dec. 19, 1960.]

ALLSTATE INSURANCE COMPANY (a Corporation), Respondent, v. JERRY P. GOLDEN et al., Defendants; MARY K. DUFFY, Appellant.

Bruce I. Hochman, Levy, Russell, DeRoy & Gaffner and George DeRoy for Appellant.

Parker, Stanbury, Reese & McGee and Raymond G. Stanbury for Respondent.

WOOD, P. J.—Action for a declaration of the rights and duties of plaintiff and defendants under a liability insurance policy. Plaintiff is Allstate Insurance Company which issued the policy. Defendant Jerry Golden was the insured named in the policy and was the driver of an automobile which was involved in a collision with another automobile. Defendants Mary Duffy and Frankie Burdick were passengers in the other automobile, and allegedly they were injured.

The judgment was that the policy of insurance was obtained by Golden by misrepresentation and fraud; that a warranty of the policy was breached at its inception, and the policy was voidable at plaintiff's option; that by reason of material misrepresentation, breach of warranty and fraud at the inception of the policy, plaintiff incurred no liability thereunder; that plaintiff is not obligated to defend Golden in the actions for damages brought by Duffy and Burdick, is not

obligated to negotiate for the settlement of their claims, and is not obligated to satisfy, in whole or in part, any judgment which Duffy or Burdick might obtain against Golden; and that the policy is rescinded as of the date of its issuance.

Defendant Duffy appeals from the judgment. She states that Allstate waived its right to rescind the policy or to "assert its policy defenses"; and that Allstate "should be estopped from asserting its policy defenses or from rescinding the policy." The court found that Allstate did not waive its right to rescind the policy or to deny liability thereunder; and that Allstate is not estopped to rescind the policy or to deny liability thereunder.

On June 7, 1958, defendant Jerry Golden made a written application to plaintiff Allstate Insurance Company for a policy of liability insurance. The printed application form included the following question: "Have you or anyone in your household ever had a suspension, revocation or refusal of any automobile license or permit to drive?" Immediately after that question, the application form included the printed words "Yes" and "No." Golden's negative answer to the question is shown on the form by a pencil (or check) mark which is by the word "No." A declaration at the end of the application was as follows: "I hereby declare the facts stated herein to be true and request the Company [Allstate] to issue the insurance, and any renewals, in reliance thereon." Jerry Golden signed his name at the end of the application.

Thereafter, in June 1958, Allstate issued and delivered to Golden a policy of liability insurance which became effective June 7, 1958, and was intended to be effective for a year thereafter. The policy insured Golden against liability for damages for personal injuries and for property damage arising out of the operation of an automobile and arising from any other cause. On a supplemental sheet of paper attached to the policy, the following printed declaration appears: "During the past two years, with respect to the named insured or any member of his household, (1) no insurer has cancelled or refused or given notice that it intends to cancel or refuse similar insurance nor (2) has any license or permit to drive an automobile been suspended, revoked or refused."

Prior to August 30, 1957, Golden had obtained a license to operate an automobile in Ohio. On August 30, 1957 (approximately nine months prior to the date Golden signed the application in California for the Allstate insurance), the Ohio license was suspended for a year because Golden had been

convicted of "speeding." On the date that Golden signed the application for insurance he had a license, which had been issued in California, authorizing him to operate an automobile.

On August 5, 1958, while Golden was driving an automobile in California, the automobile was involved in a collision with an automobile in which defendants Duffy and Burdick were riding as passengers. On August 6, Allstate received a report of the collision, including information that Duffy and Burdick had been injured. On August 7, Allstate received information that Golden's Ohio operator's license had been suspended in 1957 as the result of his conviction of "speeding." On September 10, Allstate delivered a letter to Golden, which stated, as follows:

"With respect to the automobile accident occurring on August 5, 1958 at Venice and Clarington Streets in the City of Los Angeles in which you were involved, you are hereby notified that the Allstate Insurance Company in investigating the said accident or any claim arising therefrom, or in negotiating for compromise settlement, or in making any settlement or in defending any suit against you or others, or in any other way acting or failing to act, does not waive any of its rights or admit any obligations under the policy.

"We are making this Reservation of Rights because of your breach of the policy declaration that during the past two years no automobile license of the named insured or of any of his household, or permit to the named insured or to any of his household to drive, an automobile, has been suspended, revoked or refused, and for other reasons.

"The service of this Notice upon you does not deprive you of any rights you may have against this Company."

On November 3, 1958, Allstate commenced this action in which it sought a declaration of the rights and duties of the parties to the action under the policy. It also sought a declaration that the policy was void or voidable, and sought a rescission of the policy. Such declaration and rescission were sought on the grounds: (1) that Golden had obtained the policy by misrepresentation and fraud in falsely stating in the insurance application that he had not had a suspension of an operator's license within two years; and (2) that he had breached a warranty in the policy, which warranty was that he had not had a suspension of an operator's license within two years.

On November 4, 1958 (the day after this action was com-

menced), Allstate sent a letter to Golden which stated, as follows:

"Dear Mr. Golden:

"All insurance companies have certain 'underwriting' regulations which determine whether or not they can provide automobile insurance in each individual case. These rules vary, just as rates vary, from one company to another.

"Cars and drivers that can be insured by one company might not fit the requirements of another company. There is nothing personal about this selection. Many factors are considered—such as mileage, use of cars, where it is driven, age of the drivers, and the accident history of each driver. Because of these underwriting rules, insurance companies must sometimes give up business they otherwise would like to have. This is not done, however, without thorough consideration of each individual case.

"Your friendly interest in coming to Allstate is sincerely appreciated, and we wish we could continue doing business with you. But we are sorry to tell you that we will be unable to continue your automobile insurance. The underwriting regulations that make this action necessary change from time to time. The fact that we are unable to provide you with insurance at this time does not mean that this will always be the case.

"In the policy, there is a 'cancellation provision' which tells you how your insurance is formally stopped. Following this provision, THE POLICY IDENTIFIED ABOVE IS CANCELLED AS OF 12:01 A.M. STANDARD TIME ON NOVEMBER 14, 1958 at your resident address. As you can see, a period of time remains before the protection stops. This will allow you time to arrange for insurance with another company.

"We are herewith returning, under check #99118, the full premium paid, of $36.80, by you to Allstate Insurance Company under the above-captioned policy number."

Golden defaulted in the action. Mary Duffy and Frankie Burdick filed answers in which they alleged that the policy issued by Allstate to Golden was valid. At the beginning of the trial they amended their answers by adding, as an affirmative defense, the allegation: "That plaintiff waived its right to rescind the said policy of insurance or to deny liability thereunder, by issuing a notice of cancellation of the policy after having full knowledge of the facts upon which the defenses to the policy, or claims of rescission are based."

The court found that the policy was issued by plaintiff in reliance upon the representation that Golden had not suffered a license suspension; on August 30, 1957, Golden's license to drive an automobile in Ohio was suspended for one year; Golden, in making said representation, "committed a breach of a material representation, and a breach of warranty and was guilty of fraud"; that "had the truth been known," plaintiff would not have issued the policy; plaintiff did not fail to take timely legal steps to assert its rights or to give Golden prompt notice of nonliability; plaintiff is not estopped "for any reason" to assert its rights to rescind the policy or to deny liability thereunder; plaintiff did not waive any of its rights to rescind the policy or to deny liability thereunder.

Appellant contends that Allstate waived, and is estopped to assert, its right to rescind the policy or to deny liability thereunder by its conduct, described as follows: stating in its letter of November 4 that, pursuant to the provision of the policy authorizing cancellation, the policy was cancelled as of November 14; delay in taking action after it acquired knowledge of Golden's misrepresentation and breach of warranty; failure to comply with a company rule to the effect that an applicant for insurance should be told that his insurance might be ineffective if he was not truthful in all respects in his application.

With respect to the letter, appellant argues that Allstate, by cancelling the policy under a provision thereof authorizing it to cancel the policy, accepted a benefit under the policy, and it thereby affirmed the "validity of" the policy. She argues further that "there can be no question but that Golden [by reason of the letter] was covered by the terms of this policy from November 4, 1958 [the date of the letter] through November 14, at midnight"; and if the policy was effective for that period, it had to be effective "for all times" commencing with the inception of the policy. The provision of the policy regarding cancellation was to the effect that Allstate might cancel the policy by mailing a written notice to the insured (Golden) stating when, not less than 10 days thereafter, the cancellation would be effective; and that if Allstate cancelled the policy, the earned premium would be computed pro rata. It seems to be appellant's argument that Allstate, by cancelling the policy under this provision, waived, and is estopped to assert, its right to rescind the policy, or to deny liability thereunder for damages allegedly sustained by appellant on

August 5 which was approximately three months before the letter was sent to Golden. In *Robinson* v. *National Auto. etc. Ins. Co.*, 132 Cal.App.2d 709 [282 P.2d 930], the plaintiff sought to recover under a policy insuring her against loss by theft. It was said therein, at page 715: "[T]he cancellation of the policy and retention of a portion of the premium occurred after the asserted theft and filing of proof of loss in connection therewith, and did not create a waiver of the insurance company's right to deny liability, or an estoppel [citations]." In *Purefoy* v. *Pacific Auto. Indem. Exchange*, 5 Cal.2d 81 [53 P.2d 155], plaintiff sought to recover under an automobile liability policy. It was said therein, at page 91: "The policy of liability insurance did not insure Austin only against liability on account of this particular accident, but also against liability for other accidents during the life of the policy, which was one year from December 15, 1929. We are of the view that by retaining the premium the insurer may have waived the right to declare the policy forfeited, and thereby have protected Austin as to other accidents during the life of the policy, but that it did not waive the right to rely on the breach of condition to defeat liability as to this particular accident."

In the present action, Allstate said in the letter which it delivered to Golden on September 10 that it did not waive any of its rights in investigating the accident or any claim arising therefrom, or in negotiating for a compromise settlement, or in making any settlement; or in defending any suit against Golden, "or in any other way acting or failing to act." It said further therein that it was making such reservation "because of" Golden's breach of the declaration in the policy regarding suspension of his automobile license or permit to drive. In this action, which was commenced on November 3, Allstate sought to rescind the policy and to obtain a declaration that it was not liable under the policy for damages arising out of the collision in which appellant was injured. It sought the rescission and declaration on the grounds of said alleged misrepresentation and breach of warranty. The letter to which appellant refers was sent to Golden on November 4, the day after the action was commenced. The full premium was returned to Golden. Even if it be assumed that Allstate is estopped by the letter to deny liability arising from Golden's activities between November 4 and midnight of November 14, it cannot be said, under the circumstances here, that by reason of the letter Allstate waived, or is estopped to assert, its right

to deny liability for damages allegedly sustained by appellant in the collision on August 5.

With respect to delay, appellant states that the policy was a general liability policy. She argues that the failure of Allstate to take action with respect to its "policy defense" until almost three months after it had knowledge of the defense justified Golden in believing that Allstate did not intend to deny the validity of the policy; this "justification becomes complete and unquestionable when the language of the November 4 letter is observed, pointing out a period of policy validity extending until November 14, 1958"; it must be presumed that this was the only policy Golden owned "during the period in question"; it may be inferred that Golden "must have" carried on some activity in the three months period which would expose him to a liability covered by the policy; by such exposure, Golden suffered a detriment. Golden did not testify at the trial (portions of his deposition were read), and there was no evidence as to his belief, his ownership of other policies, or his activities. Appellant's argument is conjectural.

The evidence was conflicting with respect to the alleged failure of the salesman to comply with the company rule that an applicant for insurance should be told that his insurance might not be effective if he was not truthful in making the application. Golden testified, in his deposition, that the salesman did not tell him that any untrue answer in the application might result in his being without insurance. When he was asked if the salesman told him that even a white lie might result in the policy being cancelled or rescinded, Golden replied, "As far as I know he didn't." The salesman testified that he did not remember whether he told Golden, in general terms, that a "white lie" is sufficient grounds for Allstate to refuse to pay a claim or judgment. He testified further that he (witness) assumed that Golden was telling the truth. Golden was under an obligation to make truthful statements in his application, and neither he nor appellant may take advantage of Golden's failure to make such statements.

Appellant contends that, regardless of the questions of estoppel or waiver, public policy requires that an insurance company be diligent in making known its position with respect to defenses under its policies of public liability insurance. She argues that if Allstate intended to seek an avoidance of the policy from its inception, it should have notified Golden that "he was in violation of the financial responsibility law of this state"; that Allstate, having uncovered a defense to the policy,

sat back and exposed Golden and every person in the state to a continuing risk for a period of three months. There was no evidence that Golden violated any financial responsibility law of this state. Although appellant's argument regarding exposing persons to risk might be applicable to claims arising from Golden's activities subsequent to the time Allstate acquired knowledge of Golden's misrepresentation and breach of warranty, there was no evidence that Golden, or appellant, or any person, suffered any detriment by any delay of Allstate in making known its position regarding such misrepresentation and breach of warranty. It does not appear that there was any delay on the part of Allstate which was contrary to public welfare.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.