61 F.3d 910
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA, a
Pennsylvania corporation, Plaintiff-Appellant,
First National Insurance Company of America, Intervenor,
v.
RESOLUTION TRUST CORPORATION, in its Corporate Capacity and
as Receiver for Imperial Federal Savings
Association, Defendant-Appellee.
GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA, a
Pennsylvania corporation, Plaintiff-Appellee,
First National Insurance Company of America, Intervenor-Appellant,
v.
RESOLUTION TRUST CORPORATION, in its Corporate Capacity and
as Receiver for Imperial Federal Savings
Association, Defendant-Appellee.
GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA, a
Pennsylvania corporation, Plaintiff-Appellee,
First National Insurance Company of America, Intervenor,
v.
RESOLUTION TRUST CORPORATION, in its Corporate Capacity and
as Receiver for Imperial Federal Savings
Association, Defendant-Appellant.
 Nos. 93-56723, 93-56731, 93-56733.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 5, 1995.
Decided May 30, 1995.
 
 Appeals from the United States District Court, for the Southern District of California, D.C. No. CV-91-01533-IEG; Irma E. Gonzalez, District Judge, Presiding.
 S.D.Cal.
 VACATED.
 
 
 1
 Before: BEEZER and TROTT, Circuit Judges, and SHUBB, District Judge.*
 
 
 2
 MEMORANDUM**
 
 OVERVIEW
 
 3
 In these consolidated appeals we are asked to decide whether Resolution Trust Corporation ("RTC"), as the receiver to Imperial Federal Savings Association ("Imperial"), is entitled to insurance coverage under policies issued to Imperial by General Accident Insurance Company ("General") and First National Insurance Company ("First National"), for losses RTC suffered when a 242-unit apartment construction project was destroyed by fire.
 
 
 4
 General appeals the district court's grant of partial summary judgment in favor of RTC in General's action seeking a declaration that General had no duty to indemnify RTC for the fire loss. General contends the district court erred by concluding RTC did not forfeit its rights under the insurance policy when it refused to allow General to examine under oath Imperial employees who were involved in the insurance claim.
 
 
 5
 RTC cross appeals, contending the district court erred by granting summary judgment in favor of General on RTC's claim that General acted in bad faith by unreasonably withholding the proceeds of the fire insurance policy.
 
 
 6
 Finally, intervenor First National appeals the district court's determination that First National's insurance policy also applies to the fire loss.
 
 DISCUSSION
 1. Appeal No. 93-56723
 
 7
 a. The Contract Language
 
 
 8
 The fire policy contains a "mortgage holder" clause which sets out the rights of the mortgagee, or mortgage holder, under the policy. General contends the district court's interpretation of the mortgage holder clause is unreasonable. The applicable language states:
 
 F. ADDITIONAL CONDITIONS
 
 9
 The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.
 
 1. Mortgage Holders
 
 10
 ....
 
 
 11
 d. If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgage holder will still have the right to receive loss payment if the mortgage holder:
 
 
 12
 (1) Pays any premium due under this Coverage Part at our request if you have failed to do so;
 
 
 13
 (2) Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so; and
 
 
 14
 (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.
 
 
 15
 All terms of this Coverage Part will then apply directly to the mortgage holder.
 
 
 16
 (Emphasis added.) Before dealing with the more difficult aspects of the clause, the obvious effects of the above language must be identified.
 
 
 17
 First, the clause provides the mortgage holder with the right to recover proceeds even if the named insured has failed to perform under the insurance agreement. This interpretation accords with the concept that a mortgage holder clause creates an independent contract between the mortgagee and the insurer which prevents the insured from invalidating the mortgagee's rights under the mortgage clause. Tarleton v. De Veuve, 113 F.2d 290, 297 (9th Cir. 1940), cert. denied, 312 U.S. 691 (1941). The mortgage holder has an independent right under the clause even though the holder was not a party to the insurance agreement and may not have knowledge of its existence. Id.
 
 
 18
 Second, before the insurer's duty to perform under the clause becomes absolute, the mortgage holder may have to satisfy three conditions which are in addition to any conditions that qualify the insurer's duty under the main contract. Like any condition precedent, the party in whose favor the condition runs can waive its performance.
 
 
 19
 Finally, at some point, all the terms of the insurance policy apply to the mortgage holder, just as if the mortgagee was the insured. The parties agree that one of the terms of the main insurance policy requires the insured to submit to examinations under oath.
 
 
 20
 The construction of a disputed insurance provision is initially subject to ordinary principles of contract interpretation. See Helfand v. National Union Fire Ins. Co., 10 Cal. App. 4th 869, 879 (Cal. Ct. App. 1992), cert. denied, 114 S. Ct. 84 (1993). "Where contract language is clear and explicit and does not lead to an absurd result, we ascertain [the parties'] intent from the written provisions and go no further." Id. However, if the insurance provision is deemed ambiguous then rules of construction unique to insurance agreements come into play. See id. at 880. "A policy provision is ambiguous if it is capable of more than one reasonable construction." Id. In determining whether a provision is ambiguous we must construe the disputed language "in relation to the whole of the instrument, with each clause giving meaning to the other." Id.
 
 
 21
 General reads the mortgage holder clause as allowing a mortgagee to recover insurance proceeds only if it complies with all the terms of the main policy and the additional three conditions contained in the clause (unless waived). In essence, General contends the clause says: "If we deny your claim ... because you have failed to comply with the terms of this Coverage Part, [a]ll of the terms of this Coverage Part will then apply directly to the mortgage holder. [T]he mortgage holder will still have the right to receive loss payment if the mortgage holder [complies with all three conditions]." This construction gives effect to all parts of the clause and, without straining the language, makes coherent the whole provision in a manner that is consistent with the purposes of the clause and the insurance agreement. The interpretation General offers is a reasonable construction of the mortgage holder clause.
 
 
 22
 The district court believed that because the "all terms" paragraph follows paragraph d, the clause also might be read to mean that "[a]ll terms of this Coverage part will then apply" only after the three conditions contained in the clause are satisfied. The district court concluded that
 
 
 23
 the application of all the terms to the mortgage [sic] occurs only after it satisfies three conditions, one of them is the payment of premiums on request, the other is submission of assigned proof of loss. And it's undisputed that neither one of these conditions has been satisfied [therefore the terms of the main contract do not apply to RTC].
 
 
 24
 This interpretation leads to a nonsensical result.
 
 
 25
 Under the district court's construction of the clause, a mortgage holder could prevent the application of the "all terms" provision by refusing to satisfy any of the three conditions. That would also mean, of course, that the mortgage holder would not be entitled to the insurance proceeds. In the present case, General apparently waived RTC's performance of the first two conditions: payment of the insurance premium and submission of a loss statement. However, General contested whether RTC satisfied the third condition: notification of a "change in risk." It makes no sense to allow RTC to argue that on the one hand it is entitled to insurance benefits because it satisfied the "change in risk" condition, but that on the other hand the "all terms" provision does not apply because it has not informed General of any "change in risk." This interpretation creates a particularly strange result in the instant case because General is attempting to use a provision of the main contract, the right to examine, to determine whether RTC satisfied the "change in risk" condition.
 
 
 26
 Perhaps realizing the problem with the district court's construction, RTC now attempts to put a different spin on the clause. On appeal, RTC contends the three conditions must be satisfied by General before the "all terms" provision applies to RTC. RTC's argument fares no better; its interpretation is contrary to the clear language and purpose of the mortgage holder clause, which clearly states that the mortgage holder must perform the three conditions.
 
 
 27
 General has presented the only reasonable interpretation of the mortgage holder clause that gives effect to all its provisions. Under general rules of contract interpretation, General's construction prevails. Accordingly, RTC's claim under the clause is subject to all the terms of the main contract, and RTC was therefore required to submit to examinations under oath.
 
 
 28
 b. Prejudice
 
 
 29
 RTC contends that even if it was required to submit to examinations, General has failed to show prejudice. Where the insured's nonperformance involves the failure to submit to examinations, the insurer may demonstrate prejudice by showing its request concerned matters that were material to the resolution of the insurance claim. See Robinson v. National Auto. & Casualty Ins. Co., 282 P.2d 930, 934 (Cal. Ct. App. 1955). General has established, as a matter of law, that the information sought through the examinations was material to the insurance claim.
 
 
 30
 First, it was possible, if not likely, that RTC had in fact received notice of the policy cancellation. Although General addressed the cancellation notice to P.O. Box 23525 instead of P.O. Box 23526, the holder of Box 23525 routinely forwarded incorrectly addressed mail to Imperial. Thus, the only means by which General could determine whether RTC had been notified of the policy cancellation was by an examination of Imperial employees.
 
 
 31
 Second, under the mortgage holder clause, the failure of RTC or Imperial to advise General of a "substantial change in risk known to the mortgage holder" deprived RTC of its right to receive the insurance benefits. Obviously, because any substantial change in risk must be "known to the mortgage holder," an examination of the Imperial employees was pertinent to a determination of whether RTC had satisfied this condition.
 
 
 32
 RTC argues that because General's independent investigation established that the apartment construction site was unguarded at the time General renewed its policy, the knowledge of the Imperial employees was immaterial. Even if we were to accept RTC's characterization of the applicable law, that "the hazard with respect to existing risks cannot be increased or enlarged by mere continuation of conditions and uses existing at the time the policy issued," RTC's argument disregards General's contentions that the physical deterioration of the fence protecting the construction project and the financial deterioration of the named insured were additional "increased risks" that were "known to the mortgage holder." RTC's failure to allow General to examine Imperial employees on these issues precluded General's resolution of the "change in risk" question.
 
 
 33
 Finally, we do not accept RTC's argument that discovery and examination at trial cured the prejudice General suffered due to RTC's nonperformance under the insurance policy. We agree with General's observation that if we were to adopt RTC's argument, "an insurance claimant could ignore a policy's examination under oath requirement with impunity and wait for subsequent litigation to cure the breach." Once RTC determined it would not permit the examination of Imperial employees, it created the risk that its refusal to cooperate would result in the forfeiture of its rights under the insurance policy.
 
 
 34
 c. Summary
 
 
 35
 We conclude that RTC was required to submit to examinations at General's request and that RTC's failure to do so was prejudicial to General's resolution of the insurance claim. By refusing to perform its duties under the policy, RTC forfeited its rights under the insurance agreement. Accordingly, we reverse the district court's decision granting RTC's motion for summary judgment, vacate the order, and remand with instructions to enter summary judgment in favor of General.
 
 2. Appeal No. 93-56733
 
 36
 Our decision regarding General's appeal compels the conclusion that General did not act in bad faith by withholding the benefits of the insurance policy. We therefore affirm the district court's grant of summary judgment in favor of General on RTC's bad faith claims.
 
 3. Appeal No. 93-56731
 
 37
 Our decision absolving General of any duty to indemnify RTC for the apartment project fire loss renders First National's appeal moot. We vacate the district court's order, and remand for further proceedings consistent with this decision.
 
 
 38
 The parties shall bear their own costs of this appeal.
 
 
 
 *
 The Honorable W. B. Shubb, United States District Judge for the Eastern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3