Maria Lidia MARTINEZ, Plaintiff(s),

v.

INFINITY INSURANCE COMPANY;
and Does 1 to 150, inclusive,
Defendant(s).

Case No. SACV 09–453 DOC (Ex).

United States District Court,
C.D. California.

May 20, 2010.

---

Mitra Chegini, California Lawyers Group Inc., La Habra, CA, for Plaintiff.

John D. Edson, Peter H. Klee, Luce Forward Hamilton and Scripps, San Diego, CA, for Defendants.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

DAVID O. CARTER, District Judge.

Before the Court is Defendant Infinity Insurance Company ("Infinity" or "Defendant")'s Motion for Summary Judgment (the "Motion"). After considering the moving, opposing, replying, and supplementary papers, as well as the parties' oral argument,[1] the Court GRANTS the Motion.

### I. Background

Plaintiff Martinez is 59 years old and resides with her three daughters, two son in laws, and grandchildren in a home in Los Angeles. She works as a nurse assistant at the Mirada Hills Rehabilitation and Convalescent Hospital for $10.40/hour. Martinez has a social security number. Martinez claims that she and her husband separated approximately 12 years ago and that she has not seen him since. Martinez filed for bankruptcy in our about 1996.

The dispute at issue concerns a used 2001 Ford Excursion that Martinez obtained on February 1, 2003 and insured with Defendant Infinity on July 11, 2005. Martinez did not purchase the car. Instead, her best friend obtained financing, purchased, and thereafter retained title to the car, even though Martinez used the car almost exclusively. The purchase price of the vehicle was $34,770.88 and Martinez traded in her 1986 Chevy Blazer for $1,000.00 against the purchase price of the Ford Excursion. On July 11, 2005, when Martinez obtained insurance for the Ford Excursion, the application for insurance stated that the vehicle had an odometer reading of 100,048 miles.

Martinez reported the vehicle missing on June 12, 2006 and recited the following facts to officers and agents of Infinity over the course of the following months. Martinez claims that on Monday June 12, 2006, she had the day off from work and drove into downtown Los Angeles in order to purchase some special tea for relaxation purposes. She parked the car at or near 8th street and Lake street in downtown L.A. and then walked to the store where she bought the tea. After purchasing the tea, Martinez returned to discover her car missing. The time at which Martinez discovered the car was before 6 p.m., when the police report was filed. Martinez then claims to have called 9–1–1 as well as her

---

1. Counsel for Plaintiff appeared at the hearing on this matter, but declined to submit oral argument either as to the Court's Tentative Order or in response to Defendants' counsel's oral argument.

23 year old daughter, who immediately came and picked her up from downtown LA. After her daughter picked her up, Martinez and her daughter visited the Los Angeles Police Department, where Martinez's daughter completed a report in English.[2]

Martinez's daughter called and reported the theft to Infinity the next day and filed a claim. The phone conversation was recorded. During that conversation, Martinez's daughter mentioned that her "dad" was with Martinez when the incident occurred, and repeatedly said "let me ask my dad" in response to particular questions asked by the insurance company's investigator. Martinez's daughter has since claimed that she used the word "dad" instead of "brother in law" because she was stressed at the time she made the phone call.

Martinez was informally interviewed in person by an Infinity investigator two days later. During that interview Martinez stated that she only had one set of keys for the car; thus, the car could have only been stolen by being broken into and the ignition somehow manipulated. Martinez further stated that the car had 90,000 miles on it at the time of theft, which contradicted the application for insurance filed over a year earlier, which represented that the car had 100,048 miles. Finally, Martinez claimed that her son-in-law was with her on the day of the purported theft, which was a claim Martinez did not make on the affidavit that accompanied the police report. Martinez admitted that the car was not purchased in her name and also stated that the car was serviced both by Midas and by her son-in-law, an assertion that Infinity claims is contradicted by Martinez's failure to produce maintenance rec-

ords for the vehicle. Two months after the informal interview, on August 27, 2006, Martinez's friend transferred ownership of the vehicle to Martinez in an attempt to assist with Martinez's insurance claim.

Infinity requested an interview with Martinez's son-in-law, on the grounds that his testimony was necessary to corroborate Martinez's claims about the car being stolen. The son-in-law did not respond to repeated requests for deposition, only to appear for a brief interview, which he unilaterally terminated due to the nature of the questions being asked. Infinity Insurance also asked for Martinez's financial records, including proof of payments for the vehicle, in order to determine whether she would have motive to fabricate the story about the car theft in order to prevent impending financial ruin. Martinez failed to produce these records despite dozens of requests over nearly 12 months. In addition, Martinez's daughter admitted when deposed that her mother did not request any help in searching for or gathering such records. Finally, Infinity requested that Martinez submit to a formal under oath examination by Infinity's attorney. On December 5, 2006, Infinity's attorneys advised Infinity to reject Martinez's claim as a result of her non-cooperation, but it appears that Infinity gave Martinez one final chance to sit for an under oath examination, which she did on February 28, 2007.

Martinez waited several months to appear for this examination, and then delayed over four months in stipulating to the accuracy of the transcript of her interview with Infinity's attorney. During this time, Martinez retained two sets of attorneys, one of whom terminated its repre-

---

**2.** The affidavit that accompanies the report was initially completed in Spanish and then an entirely separate sheet that purports to be the English translation of the affidavit was added on.

sentation a little over a week after taking on Martinez's case. After Martinez took several months to certify and return the examination transcripts to Infinity, Infinity refused to honor the claim by a July 17, 2007 letter. On February 6, 2008, Martinez issued a demand for arbitration, which was denied.

On August 11, 2008, Plaintiff filed her state court complaint bringing causes of action for: (1) breach of written contract; (2) breach of the implied covenant of good faith and fair dealing; (3) violation of California Insurance Code § 790.03(h); and (4) bad faith denial of contract. Plaintiff filed a First Amended Complaint (FAC) in state court on November 18, 2008 that brought only two causes of action for: (1) breach of contract; and (2) breach of the implied covenant of good faith and fair dealing. Infinity filed an Answer in state court on December 19, 2008 and removed the case to this Court on December 22, 2008. The Court remanded the case on February 24, 2009 for lack of subject matter jurisdiction, on the grounds that the state court complaint did not plead an amount in controversy in excess of 75,000 dollars. Martinez thereafter responded to certain Special Interrogatories delivered by Infinity and claimed that she suffered $50,000 in emotional distress damages in addition to contract damages and attorneys' fees totaling $44,073.43. *See* Notice of Removal ¶ 8–9.

## II. Legal Standard

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Chevron Corp. v. Pennzoil Co.,* 974 F.2d 1156, 1161 (9th Cir.1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact *Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir.1990).

Once the moving party meets its burden, the "opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505. Furthermore, a party cannot create a genuine issue of material fact simply by making assertions in its legal papers. There must be specific, admissible evidence identifying the basis for the dispute. *S.A. Empresa De Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.,* 690 F.2d 1235, 1238 (9th Cir.1982). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

## III. Discussion

Martinez brings causes of action for breach of contract and breach of the implied covenant of good faith and fair deal-

ing. Infinity moves for full dismissal by way of summary judgment on the following grounds. First, Infinity claims that Martinez did not comply with the requirement in the insurance contract that the insured submit to an under oath examination and provide all documents reasonably related to the insurer's investigation of the claim. Specifically, Martinez took several months to sit for an under oath examination and never provided her financials or the proof of payments for the vehicle. Second, Infinity claims that it could not have acted in bad faith because there was a reasonable basis for Infinity to conclude that Martinez's claim was fraudulent, in light of the inconsistencies in Martinez's testimony and the notion that Martinez's car was stolen in broad daylight by an intruder who broke in without a key and overcame the vehicle's anti-theft system, which prevents manipulation of the car's ignition. Third, Infinity claims that Martinez never had an insurable interest in the vehicle since she was not the vehicle's owner at the time of the theft.

As an initial matter, both parties are mistaken about the pending causes of action in this lawsuit. Infinity makes reference to a claim for bad faith, and in addition claims that "the third cause of action," which purportedly alleges a violation of "Insurance Code Section 790.03(h)" is improper. Infinity apparently refers to Plaintiff's initial state court complaint, which was superceded by the FAC filed on November 11, 2008. The FAC does not allege a cause of action for bad faith, nor does it allege a cause of action for violation of Cal. Ins.Code § 790.03(h). Nevertheless, in her Opposition, Plaintiff purports to dismiss the FAC's non-existent third cause of action. Having noted these issues, the Court turns its attention to whether a genuine issue of material fact remains as to either of the FAC's causes of action—for breach of contract and breach of the implied covenant of good faith and fair dealing.

## 1. Breach of Contract

■ "A cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for non-performance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado,* 158 Cal.App.4th 1226, 1239, 70 Cal.Rptr.3d 667 (2008).

■ Defendant argues that Martinez's failure to disclose financial information, as well as her subsequent failure to timely certify and return to Infinity the transcripts of her under oath examinations by Infinity's attorneys, breached the insurance policy's "cooperation clause," which in relevant part reads as follows: "A person claiming any coverage of this policy must also: (1) cooperate with us and assist us in any matter concerning a claim or suit...." *See* Ex. A to Statement of Uncontroverted Facts at 9. The insurance policy further provides that "[Infinity] may not be sued unless there is full compliance with all terms of the policy." *See id.* at 9. While Martinez indeed failed to produce certain financial records, and required four months and several notices to sit for an under oath examination, the fact remains that she ultimately did submit to examination. Thus, the California authorities that hold that failure to sit for an examination constitutes a breach of an insurance agreement's cooperation clause, *see, e.g., Brizuela v. Calfarm Ins. Co.,* 116 Cal.App.4th 578, 590, 10 Cal.Rptr.3d 661 (2004) (citing *Robinson v. National Auto, etc. Ins. Co.,* 132 Cal.App.2d 709, 282 P.2d 930 (1955)), are inapposite.

In the context of cooperation that *does not* involve submission to an under oath examination, California courts have re-

quired a showing that the insurer was prejudiced in its investigation by the insured's failure to cooperate. *See Brizuela,* 116 Cal.App.4th at 590, 10 Cal.Rptr.3d 661 (citing *Campbell v. Allstate Ins. Co.,* 60 Cal.2d 303, 305–06, 32 Cal.Rptr. 827, 384 P.2d 155 (1963)). Indeed, *Brizuela* expressly distinguished between a defense that an insured failed to cooperate with the defense that an insured failed to sit for an under oath examination. *See id.* ("There is a distinction, however, between a breach of a duty of cooperation and a breach of the duty to submit to an examination under oath. Lack of cooperation can be ascribed to many acts or omissions—some of significance and some trivial. It makes sense to require an insurer to demonstrate prejudice before denying a claim based on breach of the duty to cooperate . . .").

The determination of whether Martinez's failure to timely produce (if at all), *inter alia,* the certified transcript of the under oath examination, the financial records related to the vehicle, and/or the maintenance records related to the vehicle, prejudiced Infinity's investigation of her claim is inherently factual. *See Ania v. Allstate Ins. Co.,* 161 F.Supp.2d 424, 427–28 (E.D.Pa.2001) (denying insurer's motion for summary judgment on the grounds that the determination of whether insurer was prejudiced by insured's failure to cooperate was ambiguous on the basis of the record and "[u]nder federal law, if the evidence on the record is ambiguous, the existence of a material breach of an insured's duty to cooperate is a question of fact for the factfinder"). Nevertheless, the facts in this case are uniformly unfavorable to Ms. Martinez. Martinez failed to produce financial documents that Infinity requested for over 12 months, failed to certify a transcript for four months, failed to produce car payment records, failed to produce maintenance records, and otherwise failed to respond to the numerous requests for information that were sent to her (in both English and Spanish).

Martinez concedes her non-cooperation on these counts and responds that the cooperation clause should be deemed invalid because it is a clause of adhesion and therefore unconscionable. However, California recognizes identical cooperation clauses in insurance contracts as valid, necessary, and enforceable. *See Brizuela,* 116 Cal.App.4th at 590, 10 Cal.Rptr.3d 661. Notably, Martinez presents no argument— nor could she—that the cooperation clause is substantively unconscionable, since it only requires that the insured cooperate. *See Van Parys v. 9th Street Market Lofts, LLC,* 2010 WL 1080948, at *5 (Cal.App. Mar. 25, 2010) ("Substantive unconscionability focuses on the terras of the agreement and the presence of overly harsh or one-sided results.").

Infinity's arguments in favor of prejudice remain uncontested The undisputed facts demonstrate indicia of fraud, which Martinez's financial records and car payment records could have rebutted. While no California case has addressed whether the failure to produce such records results in prejudice as a matter of law, the state of Washington has reached such a conclusion in the context of a standard identical to California's. *See, e.g., Pilgrim v. State Farm Fire & Cas. Ins. Co.,* 89 Wash.App. 712, 950 P.2d 479, 486 (1997) (finding prejudice as a matter of law and noting that "[w]ithout access to financial documents, State Farm could not evaluate the validity of the Pilgrims' claims"); *see also Tran v. State Farm Fire & Cas. Co.,* 136 Wash.2d 214, 961 P.2d 358, 359–60 (1998) (en banc) ("an insurer suffers prejudice, as a matter of law, when its insured fails to provide it with the financial records it reasonably needs in order to complete an investigation into the question of whether the insured's

claim was fraudulent"). Even applying the limited California precedent to directly address this issue leads the Court to conclude that the particular facts of this case support a finding of prejudice. Infinity required *at least* the car payment records, if not Martinez's financial records, to substantiate her claim, evaluate the bizarre inconsistencies in her testimony, and calculate the value of the vehicle. *See, e.g., Bainbridge, Inc. v. Calfarm Ins. Co.,* No. D042362, 2004 WL 2650892, at *3–4 (Cal. App. Nov. 22, 2004) (finding that insurer was substantially prejudiced by insured's failure to produce documents relevant to calculate value of claim).

There is no genuine issue of material fact that Martinez failed to produce financial documents, car payment records, and maintenance records, and failed to timely produce herself for an under oath examination and certify a transcript of that examination. Nor is there any genuine issue of material fact as to whether Martinez's omissions breached the contract's cooperation clause and substantially prejudiced Infinity's investigation of Martinez's claim.

For the foregoing reasons, the Court GRANTS the Motion as to the first cause of action for breach of contract.

### 2. Breach of Implied Covenant of Good Faith and Fair Dealing

■■ To successfully plead a breach of the implied covenant of good faith and fair dealing under California law, Plaintiff must establish that Defendant's actions both breached the contract *and* the actions, taken in bad faith, frustrated the actual benefits of the contract. *Celador Intern. Ltd. v. Walt Disney Co.,* 347 F.Supp.2d 846, 853 (C.D.Cal.2004). In first party insurance cases, the implied covenant of good faith and fair dealing is breached only if the denial or delay in provision of benefits is unreasonable. *Wilson v. 21st Century Ins.*

*Co.,* 42 Cal.4th 713, 723, 68 Cal.Rptr.3d 746, 171 P.3d 1082 (2007).

■■ "Where there is a genuine issue as to the insurer's liability under the policy for the claim asserted by the insured, there can be no bad faith liability imposed on the insurer for advancing its side of that dispute." *Chateau Chamberay Homeowners Ass'n v. Associated Intern.,* 90 Cal.App.4th 335, 346, 108 Cal.Rptr.2d 776 (2001). "[A]n insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract." *Wilson,* 42 Cal.4th at 723, 68 Cal.Rptr.3d 746, 171 P.3d 1082. "[A] court can conclude as a matter of law that an insurer's denial of a claim is not unreasonable, so long as there existed a genuine issue as to the insurer's liability." *Chateau Chamberay Homeowners,* 90 Cal. App.4th at 347, 108 Cal.Rptr.2d 776.

■ The dispute here concerns the proper interpretation of the insurance agreement's cooperation obligation as well as the provisions of the agreement related to misrepresentation and potential fraud. The Court finds that Infinity's interpretation of the agreement's provision, which led Infinity to conclude that Martinez's failure to timely disclose financial information as well as the numerous inconsistencies in Martinez's testimony, created a genuine issue as to Infinity's liability. Martinez has provided no evidence in opposition that suggests that Infinity acted with bad faith or with an unreasonable interpretation as to the insurance agreement.

For the foregoing reasons, the Court GRANTS the Motion as to the second cause of action for breach of implied covenant of good faith and fair dealing.

### IV. Disposition

Accordingly, the Court GRANTS the Motion.[3]

IT IS SO ORDERED.

---

3. In a declaration attached to her second opposition brief, Martinez's counsel requested the opportunity submit supplementary argument in light of some grave and tragic medical challenges counsel now faces. Lead counsel's associate attended the hearing on this matter. At that hearing, the Court twice asked counsel to submit argument with respect to the Court's Tentative Order and/or any of the issues raised by Defendant's Motion. Both times, counsel declined to submit oral argument. While the Court is deeply sympathetic to the plight of Martinez's counsel, associate counsel's failure to submit any oral argument—even upon the Court's request—left the Court no choice but to proceed to decision. In any event, the undisputed facts, and not the legal argument contained in Martinez's brief, are the basis for the instant Order.